[No. 33267. Department One. January 19, 1956.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER SILVER-MAN, *Appellant*.[1]

[1]Reported in 292 P. (2d) 868.

Warner, Pierce & Peden, for appellant.

Charles O. Carroll, F. A. Walterskirchen, and James A. Andersen, Jr., for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment and sentence upon conviction on fifteen counts of the crime of possession of obscene pictures or photographs with intent to show them, in violation of RCW 9.68.010.

Defendant Silverman is the owner and operator of the Sportland Arcade, located at 95 Seneca street, in Seattle. The establishment is on two floors. The portion with which we are concerned has a public entrance from a stairway which is between Post and First avenues on Seneca street. It is a large room divided into two parts. A counter is located approximately in the center, where one can obtain change, magazines, cigarettes, etc. One part consists of so-called machines of skill, pool tables, and various amusement devices. The other part consists entirely of "peep shows."

The latter are shown in this manner. A large upright machine, called a "PAN-O-RAM," contains a moving picture projector and film. It has a slot for the entrance of coins to actuate the machine and film, and has a small viewing place in which to see the films that are portrayed inside. There were, at the time in question, about forty machines in the room, and some of them were located in dark recesses. Prominently displayed on the outside of the machines were pictures of women in various stages of undress. Some of them had titles, such as "Nude Film," "The Roommate Problem," "Clean Cut Kid," and "King Size."

Some of the machines required the deposit of a dime; others, the deposit of a quarter. There was a continuous film in each machine. After a coin was deposited, the machine would light up and the film would show for a couple of minutes. Then a sign would flash, stating: "Deposit Another Coin." It would then click off. By depositing another coin, the machine would reactivate. It required from eight to fifteen coins to view the entire film.

On the evening of December 1, 1954, Detective E. M. Wesselius entered the establishment. Several members of the public were present viewing the films. Fred Lipke, a former police officer, was behind the counter making change for those who wanted to see the films. Detective Wesselius viewed the complete films in five separate machines. The following day, December 2, 1954, he returned at about eleven a. m. A janitor was sweeping the stairs. Alan F. Kelly, another former police officer, was behind the counter. Wesselius put in enough coins to observe that the same films were there with the exception of one which had a sign on it, "Temporarily out of Service." He walked up to Kelly and asked about that particular film. Kelly said, "Oh, that film got gummy. They get gummy every so often, and the mechanic took it in the back work room to clean it up." When asked how long before it would be available for public view, Kelly replied that it would be a couple or three hours. Wesselius then placed Kelly under arrest for showing obscene films.

Three other police officers who had been stationed outside then came in. Those members of the public who were present were ordered out, and the door was locked. The other officers then viewed several of the films and decided to confiscate sixteen machines containing films which they considered obscene. We will not relate in detail the filth shown on the films. Suffice to state that they portray nude women engaged in extremely suggestive antics and gyrations designed to appeal to the baser passions of the men who viewed them.

In the meantime, Kelly called Silverman on the telephone, who, in turn, called B. Gray Warner, his attorney. Mr.

Warner came down and protested the seizure as being unlawful. Finally, it was agreed that the machines would be opened, the films removed and taken by the police, still over the protests of Mr. Warner. Silverman was arrested the following day.

Silverman and Kelly were charged jointly on sixteen counts. At the trial, the state moved for the dismissal of Kelly in order that he might be a witness for the state, pursuant to RCW 10.46.110. The motion was granted, and Kelly was called as a state's witness.

The defendants, before the trial, timely moved to suppress the evidence on the ground of an illegal search and seizure and on the further ground that the evidence was not obtained as the sequel to a legal arrest. The matter came on for hearing before Honorable James Hodson, who denied the motion. Similar motions were made and denied during the course of the trial. The trial was also before Judge Hodson, and a jury was waived. Judge Hodson found the defendant not guilty on one count and guilty on fifteen counts.

Error is assigned to the denials of the motions to suppress the evidence; in admitting as exhibits the sixteen seized films; that there was insufficient legal evidence to support the trial court's findings of fact and conclusions of law; in denying appellant's challenge to the evidence; in denying motion in arrest of judgment or, in the alternative, for a new trial; in entering judgment and sentence against appellant; and in entering judgment and sentence on each individual count, it being contended that only one single offense was committed, for which there can be only one single punishment.

RCW 9.68.010 provides:

"Every person who—

"(1) Sells, lends, or gives away, or has in his possession with intent to sell, lend, give away, or show any obscene or indecent book, magazine, pamphlet, newspaper, story paper, writing, picture, drawing, photography, or any article or instrument of indecent or immoral character; . . .

"(5) Causes to be performed or exhibited, or engages in

the performance, or exhibition of any obscene, indecent, or immoral show, act, or performance; shall be guilty of a misdemeanor."

We find no merit in appellant's contention that these films did not come within the purview of the statute. It makes it a crime for any person to have in his possession with intent to show, or cause to be exhibited, any obscene picture or photograph. A moving picture film is a series of pictures or photographs.

It is contended that, the arrest being made without a warrant, the seizure of the films was illegal. An arrest may not be made without a warrant for a misdemeanor if the offense is not committed in the arresting officer's presence. Conversely, an arrest for a misdemeanor may be made without a warrant when the offense is committed in the arresting officer's presence. *State v. Llewellyn,* 119 Wash. 306, 205 Pac. 394; *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841; *State v. Olsen,* 43 Wn. (2d) 726, 263 P. (2d) 824.

Here Detective Wesselius viewed the films. He questioned Kelly as to one film which was missing. Kelly's answer, and the fact that he was the only person in charge of the peep show area, was sufficient evidence to justify his arrest. He had the key and opened the place to the public in the morning. If someone could not get a machine to work, Kelly made a note of it and notified the mechanic. He was authorized by Silverman to return the quarter to the customer. It was his duty to keep minors and women out of that area. In case of any dispute with customers, he would either call the police or throw them out himself. The only other employees were the janitor and the mechanic. Neither of them dealt with the public—he did. The crime of possession of obscene pictures with intent to show them was committed in the presence of the arresting officer.

It is contended that the pictures on the outside of the machine were not obscene; that the films were not visible and that therefore the crime was not committed in the officer's presence. The place was open to the public. Detective Wesselius entered as a member of the public. The films were in the machines and merely required the deposit of

coins to make them visible. Clearly the films were in defendant's possession for only one purpose—to show them to members of the public for a consideration. That constituted a crime under the statute. That crime was committed in the arresting officer's presence. The arrest was valid. The arrest being valid, the officers had the right to seize the films.

This disposes of all of the assignments of error except the last, wherein it is contended that one single offense was committed, for which there could be only one sentence. The trial court considered each count as a separate offense and entered a separate sentence for each one. Appellant relies on a recent United States supreme court decision, handed down May 23, 1955. It is *Bell v. United States,* 349 U. S. 81, 99 L. Ed. 905, 75 S. Ct. 620. The case involved a violation of the Mann act wherein the petitioner transported two women across a state line on the same trip, and in the same car. A separate count was charged as to each woman. The relevant provisions of the act are:

"Whoever knowingly transports in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose. . . .

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U. S. C. A. § 2421.

The court, in holding that this constituted one act, speaking through Mr. Justice Frankfurter, said:

"When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."

Our legislature, in defining the crime under consideration, did not "make each stick in a faggot a single criminal unit." Nevertheless, we do not experience any difficulty in interpreting its will. The legislature has authorized separate counts in one information. RCW 10.37.060 provides:

"When there are several charges against any person, or persons, for the same act or transaction, or for two or more

acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments or informations the whole may be joined in one indictment, or information, in separate counts. If two or more indictments are found, or two or more informations filed in such cases, the court may order such indictments or informations to be consolidated."

█ Here were obscene films shown in fifteen separate machines. Each film was, of necessity, shown separately. Only one person could be shown a film at one time. The showing of each film constituted a separate and distinct offense. The offer to show each film constitute a separate and distinct offense. Each count was proved by separate and distinct evidence. See *Ebeling v. Morgan*, 237 U. S. 625, 59 L. Ed. 1151, 35 S. Ct. 710. A different problem would be presented if separate charges had been preferred for showing different portions of the same film by depositing additional coins. The trial court did not err in sentencing on each count.

█ However, we are of the opinion that the cause should be remanded for sentencing because of a misconception of the penalty by the court and counsel at the time of sentencing. At that time, it was called to the court's attention that RCW 9.68.010, under which appellant was charged, made the crime a misdemeanor. The obscenity statute was enacted as § 207, chapter 249, Laws of 1909, p. 951. It made the crime a gross misdemeanor. The law has never been repealed or amended by the legislature, which, of course, is the only body authorized to do so.

The judgment of conviction is affirmed. The cause is remanded for resentencing.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.