[Nos. 39257, 39258.    Department Two.    February 1, 1968.]

THE CITY OF TACOMA, *Respondent*, v. LOREALI HARRIS *et al.. Appellants.*\*

*Hugh E. Fountain, Jr.,* for appellants.

*Marshall McCormick, Robert R. Hamilton, John J. Majers,* and *Bradford M. Gierke,* for respondent.

HUNTER, J.—This is a consolidated appeal by defendants (appellants) Loreali Harris and Paul W. Heck, who were convicted in the Superior Court for Pierce County, respectively, of interfering with a police officer and resisting arrest.

The testimony discloses that prior to October 22, 1965 Mrs. Harris had commenced divorce proceedings against her husband. On the evening of the 22nd, Mrs. Harris obtained the services of a 16-year-old girl as a baby-sitter for her two small children. Early that evening before her departure, Paul W. Heck, her boyfriend, arrived. He tried to persuade her not to go out that night and they quarreled. Mrs. Harris left the house and Heck stayed. Mrs. Barrett, a neighbor, discovered Heck's presence in the Harris house

*Reported in 436 P.2d 770.

when the baby-sitter used her telephone. The baby-sitter's mother, upon being advised by Mrs. Barrett over the telephone that Heck was in the Harris house, requested Mrs. Barrett to ask Heck to leave. Mrs. Barrett did as requested, and found Heck drinking champagne from one of two bottles he had with him. Heck did leave but returned, and Mrs. Barrett and an aunt of the baby-sitter revisited the Harris house and the aunt asked Heck to leave, stating "either you go or we will call the police." Mrs. Barrett thereupon called the police and reported an unwanted guest at the Harris house. The children and the baby-sitter were then removed by the aunt and Mrs. Barrett to her home. Heck attempted to prevent them from taking the children and threatened to throw lighter fluid upon Mrs. Barrett and to burn down the house. Mrs. Barrett again called the police.

At about 10:30 p.m., in response to Mrs. Barrett's complaint, Officers Christensen and Anderson of the Tacoma Police Department drove by the Harris house and found everything quiet. At about 11:01 p.m., some other officers checked the street and found no evidence of a disturbance.

About 2 a. m. the following morning, Mrs. Barrett saw Heck carrying a gas can around the outside of the Harris house. She again called the police and reported an arson attempt, and three patrol cars and six police officers arrived at close intervals. When the first officers arrived, Heck was standing in the doorway of the Harris residence with a bottle in his hand. When Mrs. Harris returned home she saw Mrs. Barrett talking with police officers on the sidewalk across the street from the Harris residence, and she joined them. She told the officers she would take care of the situation. She ran across the street, yelling to the defendant Heck, and entered her house.

The officers then heard loud talking and yelling coming from the Harris residence. They heard the angry voices of a woman and a man. Six officers approached the house. Christensen, accompanied by Anderson and two other officers, went to the front door and knocked. It was slightly ajar and swung open. What then transpired is in dispute.

Officer Christensen testified that he saw Heck and Mrs. Harris confronting each other. Heck shouted that he had a gun and would shoot any cop who came into the house. He was brandishing a bottle in one hand and had his other hand in his pocket. Officer Christensen and two other officers rushed Heck and took away the bottle. They arrested and searched him; no gun was found. In the meantime, two other officers had entered the house from the back door. Heck struggled violently with the officers and managed, at one time, to momentarily seize another bottle. Mrs. Harris yelled at the officers as they struggled with Heck and tried to pull them away from him. She was repeatedly warned not to interfere, and when she persisted, was arrested. Heck continued to resist as he was brought out of the house to the patrol car.

The defendants' version was that Heck had made no threats; that Mrs. Harris had been protesting the entry of the officers without a warrant; and that the officers employed unnecessary violence in arresting Heck and Mrs. Harris.

Defendant Heck was charged on three counts: (1) breach of the peace, (2) using force and violence against the person of another (Officer Christensen), and (3) resisting arrest. The jury found him not guilty on the first two counts and guilty on the third count. Mrs. Harris was found guilty of interfering with an officer in the performance of his duty, and not guilty of resisting arrest. This consolidated appeal followed from the judgments entered upon the jury verdicts.

Prior to trial the defendants moved for suppression of the officers' testimony on the ground that the arrest was unlawful, under the rule that evidence which has been obtained in violation of the law is inadmissible. *Tacoma v. Houston*, 27 Wn.2d 215, 177 P.2d 886 (1947). The denial of this motion is the primary issue raised in this appeal.

The crimes with which the defendants were charged are misdemeanors under a Tacoma ordinance, the relevant portion of which reads:

8.12.010 Disorderly persons defined and enumerated. The following persons are hereby declared to be disorderly persons:

.  .  .  .

Any person who shall resist or interfere with any policeman or peace officer of said City, or who shall refuse, when called upon, to assist him in the discharge of his duty, or who shall aid or assist any person in the custody of any policeman or peace officer to escape from such custody.

Any person who shall by noisy, riotous or tumultous [sic] conduct disturb the quiet and peace of said City, or of any meeting or assemblage therein.

■ It is a basic rule that, in the case of misdemeanors, an arrest may not be made without a warrant unless the arresting officer has probable cause to believe that the offense is being committed in his presence. *State v. Silverman,* 48 Wn.2d 198, 292 P.2d 868 (1956). We defined probable cause for the purposes of this test in *Sennett v. Zimmerman,* 50 Wn.2d 649, 651, 314 P.2d 414 (1957), wherein we quoted from *Garske v. United States,* 1 F.2d 620, 622 (1924), as follows:

"It is the well-established doctrine now throughout the United States that for a crime, which they have probable cause to believe is being committed in their presence, *though it be a misdemeanor,* duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses."

In the instant case the arresting officers had received a complaint from Mrs. Barrett about 10 p.m., that there was an uninvited guest at the Harris residence. Other complaints followed during the evening. At about 2 a.m. the following morning, they received a further complaint that a man was attempting to burn down the house. The officers first at the scene saw Heck standing in the doorway with a bottle in his hand. When Mrs. Harris arrived and was informed of the evening's incidents, she said she would take care of the situation and ran into the house yelling at Heck. After

she entered, the officers, out on the street, clearly heard loud angry voices. Then, in view of this course of events, it was proper for the officers to make an investigation, and to halt the disturbance at this hour of the morning. The trial judge ruled that the arrest was lawful because the officers had probable cause to believe a breach of the peace was being committed in their presence. See *Ulvestad v. Dolphin*, 152 Wash. 580, 278 Pac. 681 (1929). When the door swung open, the threatening words and gestures of Heck constituted evidence of a further breach of the peace in the officers' presence—an interference with the officers in the performance of their duty to halt the disturbance. Mrs. Harris' arrest thereafter, because she was attempting to interfere with the officers in the performance of their duty, was also lawful. Since the arrests were lawful, the motion for the suppression of the testimony of the officers was properly denied.

■ The defendants next contend that the court erred in giving instructions Nos. 9, 10, 11 and 11A, for the reason that these instructions did not contain the element essential to the defendants' defenses; that every person has a right to resist an unlawful arrest, and in preventing such illegal restraint of his liberty he may use such force as may be reasonably necessary. The record shows that the jury was so instructed in instruction No. 11B given by the trial court. We have often stated that an instruction may not be read in isolation but must be considered together with all the other instructions given. *State v. Hopkins*, 71 Wn.2d 10, 426 P.2d 496 (1967); *State v. Holbrook*, 66 Wn.2d 278, 401 P.2d 971 (1965); *Miller v. Staton*, 58 Wn.2d 879, 365 P.2d 333 (1961). There is no merit to the defendants' contention.

The defendants finally contend that the evidence does not support the jury verdicts. It having been determined that the testimony of the officers is admissible, the verdicts are amply supported by the evidence.

The judgment entered upon the jury verdicts is affirmed.

FINLEY, C. J., NEILL, J., and WARD J. Pro Tem., concur.