[No. 20352–5–I.  Division One.  July 31, 1989.]

THE CITY OF SEATTLE, *Respondent,* v. JAMES J. CADIGAN, *Petitioner.*

---

[16]18 Cal. 3d 335, 556 P.2d 737, 134 Cal. Rptr. 375 (1976).

*John R. Muenster*, for petitioner.

*Douglas N. Jewett, City Attorney*, and *Betty Ngan, Albert Raines*, and *Kathryn McLeod, Assistants*, for respondent.

SCHOLFIELD, J.—James Cadigan appeals his conviction for resisting arrest, a violation of Seattle Municipal Code (SMC) 12A.16.050.

## FACTS

Cadigan was initially charged with disorderly conduct, assault, and resisting arrest. The disorderly conduct charge was apparently dismissed on the City's motion prior to trial. The City's evidence suggested that Cadigan was arrested for obstructing a public officer, but this offense was never charged.

On April 9, 1986, at 12th and Madison in Seattle, Seattle police officers Shirey, O'Quinn, and Cotter were engaging in a routine arrest of an individual who had been stopped for having studded tires on his car, and the officer who stopped him discovered an outstanding warrant.

Cadigan was traveling eastbound on Madison in his yellow Mustang. When he stopped at the traffic light at the

intersection, he began to yell at the arrestee, shouting, "'I'll be your witness. They can't treat you like this. They're harassing you.'" Cadigan also addressed his remarks to the officers, saying, "'You . . . pigs. Your [*sic*] out of line.'"

Although the light turned green, Cadigan did not move through the intersection. He remained where he was, blocking traffic, and yelling. The vehicles behind Cadigan went into the westbound lane to go around his car.[1] Officer Cotter went over to Cadigan and told him three or four times to move his car, and that he was risking being cited for blocking traffic. Cadigan's response was, "'No, no[,] you pigs are out of line.'" Cadigan refused to either move on or move his car over to the curb, so Officer Cotter informed Cadigan that he was under arrest.[2] Officer Cotter opened Cadigan's door for him, and Cadigan got out of the car, heading for the front of the car. Officer Cotter reached over to Cadigan and said, "'No, over here.'" Cadigan said, "'[G]et your . . . hands off me,'" and hit Officer Cotter in the mouth.

The other officers came over to assist at that point, and all three were holding Cadigan, who bit Officer Cotter on the hand. As the officers were attempting to get Cadigan away from the street, someone lost his balance, and the group tumbled to the ground. Officer Cotter tore a ligament in his right ankle, and Cadigan injured his shoulder and received abrasions on his face.

Cadigan's version of the incident was that as he was on his way home from a cocktail lounge where he had consumed three vodka and grapefruits, he observed the officers "getting a little rough" in their arrest, and that he (Cadigan) told the officers to "take it easy". According to Cadigan, Officer Cotter told him to "move on", but Cadigan was

---

[1] Cadigan argues that he was in the left–hand lane, and that the cars behind him went around him in the right–hand lane.

[2] At trial, Officer Cotter was asked what the arrest was for, and his reply on tape was inaudible. He either said "obstructing us as servants" or "creating a disturbance".

unable to do so because there were cars in front of him and on his right side. Cadigan testified that he got out of the car, and Officer Cotter circled around him and slipped and fell, and then Cadigan was grabbed from behind and thrown on the ground, and that one of the officers smashed his face against the ground. Cadigan testified that he was never told by any of the officers that he was under arrest. He also denied that he hit Officer Cotter in the mouth.

Defense counsel moved to dismiss both the assault charge and the resisting arrest charge. Both motions were denied. Although all of the discussion concerning proposed jury instructions was not transcribed, the report of proceedings indicates that defense counsel requested that the trial court instruct the jury that the City was required to prove the absence of self–defense on the resisting arrest charge. The trial court rejected the defense–proposed self–defense instruction, which set forth a subjective standard for evaluating the use of force in resisting arrest, and also contained "no duty to retreat" language. However, the trial court did instruct the jury that:

> A person illegally arrested by an officer may resist the arrest; the means used to resist an unlawful arrest must be reasonable and proportioned to the injury attempted upon the party sought to be arrested.
> The City must prove the lawfulness of the arrest beyond a reasonable doubt.

Instruction 8, in part.

The jury returned a "not guilty" verdict on the assault charge, and a "guilty" verdict on the resisting arrest charge. This appeal timely followed.

### LAWFUL ARREST

Cadigan argues that the City's evidence failed to prove the elements of the charge of obstructing a public officer, and therefore, the resisting arrest conviction cannot stand. A challenge to the sufficiency of the evidence to convict cannot be sustained if, considering the evidence in a light most favorable to the State, a rational trier of fact could have found all of the elements of the crime charged beyond

a reasonable doubt. *State v. Baeza*, 100 Wn.2d 487, 670 P.2d 646 (1983); *see also Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781, *reh'g denied*, 444 U.S. 890 (1979).

The Seattle city ordinances pertinent to this case read as follows:

### 12A.16.010 Obstructing a public officer.

A. A person is guilty of obstructing a public officer if, with knowledge that the person obstructed is a public officer, he:

1. Intentionally and physically interferes with a public officer; or

2. Intentionally hinders or delays a public officer by disobeying an order to stop given by such officer; or

3. Intentionally refuses to cease an activity or behavior that creates a risk of injury to any person when ordered to do by a public officer; or

4. Intentionally destroys, conceals or alters or attempts to destroy, conceal or alter any material which he knows the public officer is attempting to obtain, secure or preserve during an investigation, search or arrest; or

5. Intentionally refuses to leave the scene of an investigation of a crime while an investigation is in progress after being requested to leave by a public officer.

B. No person shall be convicted of violating this section if the Judge determines, with respect to the person charged with violating this section, that the public officer was not acting lawfully in a governmental function.

C. For purposes of this section, a "public officer" means those individuals responsible for the enforcement of the provisions of the Seattle Municipal Code and empowered to make arrests for offenses under the Seattle Municipal Code or those individuals responsible for the enforcement of the criminal laws of the state.

[Former] **12A.12.010 Disorderly conduct**

A. A person is guilty of disorderly conduct if he or she intentionally and maliciously:

. . .

2. Obstructs pedestrian or vehicular traffic in a public place by walking, standing, sitting, lying, or placing an object, in such a manner as to directly block passage by another person, or to require a person approaching to take evasive action to avoid physical contact.

### 12A.16.050 Resisting arrest.

A person is guilty of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from lawfully arresting him.

Both parties to this appeal acknowledge that the trial court applied SMC 12A.16.010(A)(3) to Cadigan's conduct in evaluating the defense motion to dismiss. Cadigan argues that his conduct did not create a risk of injury, that it was no different from that of a driver who stops to make a left–hand turn, and that his right to make comments to police officers is protected by the First Amendment.

We need not decide whether Cadigan's arrest for the crime of obstructing a public officer was valid based on his conduct "creat[ing] a risk of injury to any person". SMC 12A.16.010(A)(3). Cadigan's conduct falls squarely within the definition of disorderly conduct set forth in former SMC 12A.12.010(A)(2), and thus, his arrest was valid.

██ An arrest for a misdemeanor without a warrant may only be made if the arresting officer has probable cause to believe the offense is being committed in his presence. *Tacoma v. Harris,* 73 Wn.2d 123, 436 P.2d 770 (1968). *See also* RCW 10.31.100.[3] Probable cause exists for a warrant-less arrest where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed. *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979). The absence of probable cause to believe that a person committed a particular crime for which a person was arrested does not create an invalid arrest if, at the time of the arrest, the police had sufficient information to support an arrest of the person on a different charge. *See State v. Stebbins,* 47 Wn. App. 482, 735 P.2d 1353, *review denied,* 108 Wn.2d 1026 (1987).

Based on the trial testimony, it is clear that at the time of his arrest, Cadigan was obstructing vehicular traffic, and he refused to cease doing so when Officer Cotter requested that he move on. Probable cause existed for Officer Cotter

---

[3]The statute reads in pertinent part: "A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer . . ."

to arrest Cadigan for disorderly conduct, pursuant to former SMC 12A.12.010(A)(2). Cadigan's argument that his conviction for resisting arrest should be reversed because the State failed to prove that he was lawfully arrested for obstructing a public officer cannot be sustained.

## SELF–DEFENSE INSTRUCTION

Cadigan argues that because he had the right to resist an arrest if he was in danger of serious injury, he had the right to have the jury instructed on self–defense.

Parties are entitled to instructions on each theory of the case that is supported by the evidence. *State v. Theroff,* 95 Wn.2d 385, 622 P.2d 1240 (1980). A jury instruction is sufficient if it states the law correctly, is not misleading, and allows the parties to argue their theories of the case. *State v. Mark,* 94 Wn.2d 520, 618 P.2d 73 (1980).

An individual who is illegally arrested by an officer may resist arrest; however, the amount of force used to resist must be reasonable and proportioned to the injury about to be received. *State v. Rousseau,* 40 Wn.2d 92, 241 P.2d 447 (1952). "The use of force to prevent even an unlawful arrest which threatens only a loss of freedom is not reasonable." *State v. Goree,* 36 Wn. App. 205, 209, 673 P.2d 194 (1983), *review denied,* 101 Wn.2d 1003 (1984). *See also State v. Hornaday,* 105 Wn.2d 120, 713 P.2d 71 (1986).

In a lawful arrest, the arrestee may not use physical force against the arresting officer unless the use of excessive force by the officer places the arrestee in actual danger of serious injury. When use of force is warranted, it cannot exceed that reasonably necessary to protect the arrestee. *State v. Westlund,* 13 Wn. App. 460, 536 P.2d 20, 77 A.L.R.3d 270 (1975).

The City's evidence to support the resisting arrest charge was that Cadigan swung around as he got out of the car, told Officer Cotter to get his hands off him, hit Officer Cotter in the mouth, and after the officers restrained him, began thrashing around. This evidence shows sufficient

"resisting" behavior to support his conviction for resisting arrest.

There is no evidence that the officers used excessive force in making the arrest. Cadigan's evidence concerning use of force by the officers was that they smashed his face into the ground after they threw him down and handcuffed him. Thus, any use of force by the officers was *in response* to Cadigan's resisting behavior, not the reverse. Therefore, we hold that the trial court was correct in refusing to give the proposed instruction, because the evidence did not support it. The instructions actually given by the trial court accurately stated the law and allowed the parties to argue their theories.

### VOID FOR VAGUENESS

Cadigan argues that the phrase "lawful arrest" makes the resisting arrest ordinance, SMC 12A.16.050, unconstitutionally vague. A statute is presumed constitutional, and the party challenging the legislative enactment has the burden of proving it is unconstitutional. *State v. Rhodes*, 92 Wn.2d 755, 600 P.2d 1264 (1979). "A statute is void for vagueness under the Fourteenth Amendment if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Myrick v. Board of Pierce Cy. Comm'rs*, 102 Wn.2d 698, 707, 677 P.2d 140, 687 P.2d 1152 (1984). "[I]f men of ordinary intelligence can understand a penal statute, notwithstanding some possible areas of disagreement, it is not wanting in certainty." *State v. Maciolek*, 101 Wn.2d 259, 265, 676 P.2d 996 (1984).

In contending SMC 12A.16.050 is void for vagueness, Cadigan relies primarily upon *Bellevue v. Miller*, 85 Wn.2d 539, 536 P.2d 603 (1975) and *Seattle v. Rice*, 93 Wn.2d 728, 612 P.2d 792 (1980).

*Miller* involved a Bellevue ordinance providing in part:

Wandering or prowling. Any person who wanders or prowls in a place, at a time, or in a manner, and under circumstances, which manifest an unlawful purpose or which warrant alarm for the safety of persons or property in the

vicinity is hereby declared to be a vagrant, and is guilty of a misdemeanor.

*Miller,* at 542.

The *Miller* court held the ordinance void for vagueness, stating that, "The terms 'wandering' and 'prowling' standing alone clearly fail to specify adequately what conduct is criminal." The court also observed that whether

> particular activity manifests an unlawful purpose or creates alarm is entirely dependent upon a police officer's opinion, not only with respect to what conduct the ordinance prohibits, but also with respect to the suspected import of the activity observed.

*Miller,* at 544.

In *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980), a municipal ordinance prohibiting criminal trespass was determined to be unconstitutionally vague. The ordinance read as follows:

> (1) A person, who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a *lawful order* not to enter or remain, personally communicated to him by the owner of the premises or some other authorized person.

*Rice,* at 730–31. The issue before the *Rice* court was whether the term "lawful order" was sufficiently specific to satisfy due process. The *Rice* court determined that it was not, because many questions have to be answered, such as: "Who is an authorized person? Was the substance of the order lawful? Was there a valid reason for the order? How long is the order to be in effect?" *Rice,* at 731–32. The *Rice* court went on to state that the criminal trespass ordinance also created the possibility of arbitrary enforcement. *Rice,* at 732.

In his dissent, Justice Dolliver argued that the conduct proscribed under the criminal trespass ordinance was that the individual not "enter or remain'" on the premises. *Rice,* at 733. Justice Dolliver went on to observe that the majority opinion compares the term "lawful order", with the term "lawful purpose", as used in *Bellevue v. Miller, supra.*

According to Justice Dolliver, the cases are inapposite. In *Miller,* the term "lawful purpose" concerned the activities of the accused. In *Rice,* the term "lawful order" created no confusion as to the activities of the accused, but rather referred to the conduct of police or other authorized persons. *Rice,* at 733–34.

In *State v. Aver,* 109 Wn.2d 303, 745 P.2d 479 (1987), a prosecution for "willfully obstruct[ing] or delay[ing] a lawfully operated train", the Washington Supreme Court held that the statutory definition of the crime was not unconstitutionally vague. In so holding, the *Aver* court's reasoning was consistent with that employed by Justice Dolliver in *Rice.* The *Aver* court distinguished previous cases where the concept of "lawfulness" was directed toward the activities of the accused. The court acknowledged the argument that in those cases, "the phrase did not provide fair notice of the conduct proscribed and raised the potential of arbitrary arrests and convictions." At page 308, the court then said:

> Here, in contrast, no such confusion exists. The term "lawfully operated" is directed not toward the activities of the accused. Rather, RCW 81.48.020 forbids a definite course of conduct—willfully obstructing, hindering or delaying the passage of a train. The proscribed activity being clearly stated, the defendants cannot claim constitutional confusion as to the lawfulness of the operation of the train.

The *Aver* court went on to say that its decision was in accord with a recent Washington Supreme Court decision in *State v. Miller,* 103 Wn.2d 792, 793–94, 698 P.2d 554 (1985), which upheld a statute providing that "'it is a class C felony to assault with intent to resist a lawful arrest or detention.'" *Aver,* at 308.

In *State v. Smith,* 111 Wn.2d 1, 759 P.2d 372 (1988), the Washington Supreme Court upheld the constitutionality of Washington's harassment statute, which forbids certain threatening activity, if done "[w]ithout lawful authority". The *Smith* court took issue with the tenor of Smith's arguments, in which he argued that what is "lawful" is not

something a person of common understanding can comprehend, and that the concept of "lawfulness" fails to provide minimal guidelines to prevent arbitrary or discriminatory enforcement. *Smith,* at 5.

The *Smith* court noted that the term "lawful" is not inherently vague, but has only been found so in the context in which it was used. Accordingly, the *Smith* court stated that it has only held a criminal statute void when it has been unable to locate sources of law giving substance to the concept of lawfulness. *Smith,* at 7–8. The *Smith* court acknowledged that instances may arise in which an individual who harasses another while having "lawful authority" may face the risk of prosecution for his activities. However, this risk is no different from the risk accompanying any kind of proscribed action taken under color of authority, according to the court. *Smith,* at 12.

The *Smith* court went on to acknowledge the facial conflict between its decision and that in *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975), but stated that the broad language in that case was misleading, because it appeared to declare that the term "unlawful" was unacceptable in all contexts. *Smith,* at 13. Pointing particularly to the language in *Bellevue v. Miller, supra* at 545, stating that

[l]egislation which purports to define illegality by resort to such inherently subjective terms as "unlawful purpose" or "alarm" permits, indeed requires, an *ad hoc* police determination of criminality[,]

the *Smith* court states:

The passage does not accurately reflect our holding in *Miller,* however, and would remain a misleading departure from our reasoning in this case were we to ignore it here. A more complete appreciation of our opinion in *Miller* makes clear that what *Miller* deemed unconstitutionally vague was not the concept of unlawfulness itself, but the perceptual notion of what conduct manifests a purpose to act unlawfully.

*Smith,* at 14. In a footnote, the opinion states that the court expresses no opinion on the continuing vitality of *Seattle v. Rice, supra,* although it acknowledges that *Rice* was grounded on the portion of *Bellevue v. Miller, supra,*

now repudiated, and that other courts have rejected *Rice. Smith,* at 14 n.3.

■ Utilizing the holdings in *State v. Aver, supra, State v. Miller, supra,* and *State v. Smith, supra,* and the analysis in *Aver* and *Smith,* we hold that SMC 12A.16.050 is not void for vagueness, because the proscribed conduct of resisting arrest is specifically delineated for the individual, and the term "lawful" is not vague as applied to conduct other than that of the accused.[4]

Judgment affirmed.

PEKELIS, J. (concurring)—I concur in the result, but would confine our holding to *State v. Aver,* 109 Wn.2d 303, 745 P.2d 479 (1987), which is dispositive under the facts presented here. In *Aver,* the Supreme Court held that a statute prohibiting willful obstruction of a "lawfully operated" train was not unconstitutionally vague because the phrase "lawfully operated" was not directed toward the conduct of the accused. *Aver,* 109 Wn.2d at 308. In support of its holding, the *Aver* court specifically cited *State v. Miller,* 103 Wn.2d 792, 698 P.2d 554 (1985) in which a state statute that prohibited resisting a "lawful arrest or detention" withstood a vagueness challenge. *Aver,* 109 Wn.2d at 308. Clearly, this authority provides a firm foundation for our holding in this case.

Notwithstanding this precedent, however, the reasoning of Judge Scholfield unnecessarily dwells on *State v. Smith,* 111 Wn.2d 1, 759 P.2d 372 (1988). *Smith,* in retreating from the court's holding in *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980), created a confusing set of standards

---

[4]Cadigan also argues that the City was required to prove that he *knew* that the arrest was lawful to convict him of resisting arrest. This contention is without merit. In *State v. Goree,* 36 Wn. App. 205, 673 P.2d 194 (1983), *review denied,* 101 Wn.2d 1003 (1984), the Court of Appeals held that an arrestee's knowledge of the lawfulness of his arrest is not an element of the crime of third degree assault for resisting a "lawful" apprehension. We apply this same logic to the Seattle ordinance.

for reviewing whether a statute prohibiting "unlawful" conduct on the part of the *defendant* is unconstitutionally vague. Here, we need only be concerned with evaluating whether the term "lawful arrest" as it applies to the *arresting officer* is void for vagueness. Like the "lawfully operated" train in *State v. Aver, supra,* the defendant's conduct is not implicated by SMC 12A.16.050 and thus, the term "unlawful arrest" is not unconstitutionally vague.

WINSOR, J. (concurring)—I concur in the result only. *State v. Miller,* 103 Wn.2d 792, 698 P.2d 554 (1985) is sufficient authority for holding that the particular phrase we deal with here, "lawfully arresting," is not unconstitutionally vague. The opinion of both my colleagues that the term "lawful" is not vague if applied only to conduct other than that of the accused, is therefore unnecessary and ill advised.

Judge Scholfield relies on dictum in *State v. Smith,* 111 Wn.2d 1, 759 P.2d 372 (1988), as authority for analyzing the vagueness question here in terms of whether "lawfully" as used in SMC 12A.16.050, concerns police conduct or the defendant's conduct. I am uncomfortable with that dictum and analysis. Judge Pekelis relies on a similar ruling in *State v. Aver,* 109 Wn.2d 303, 745 P.2d 479 (1987). I hold out hope that *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975) and *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980), remain viable authority. I do not understand how "lawful" is less vague, when applied to the conduct of others, than when it is applied to the conduct of defendants. In *either* case, defendants must proceed at their peril based upon their ability to ascertain whether or not certain conduct is "lawful."

I believe that we must continue to examine allegedly vague terms by focusing on the particular use of the challenged word in the context of the particular statute involved. Only by this means can the two purposes of the constitutional definiteness requirement, *i.e.,* ensuring that citizens have fair notice of criminally proscribed conduct,

44

and preventing arbitrary arrests and convictions, be achieved. *E.g., Smith,* 111 Wn.2d at 18; *Rice,* 93 Wn.2d at 731.

Review denied at 113 Wn.2d 1025 (1989).