FILED
COURT OF APPEALS
DIVISION II

2013 NOV 26 AM 9: 08

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 40262-9-II |
| Respondent, | |
| v. | |
| LARRY DOUGLAS STOVALL, | UNPUBLISHED OPINION |
| Appellant. | |
| In re Personal Restraint Petition of | (consolidated with<br>Nos. 41575-5-II and 42278-6-II) |
| LARRY DOUGLAS STOVALL, | |
| Petitioner. | |

QUINN-BRINTNALL, P.J. — Larry Stovall pleaded guilty to one count of unlawful possession of cocaine with intent to deliver and one count of unlawful delivery of cocaine with a bus stop enhancement. Stovall appeals, arguing that (1) he received ineffective assistance of counsel, (2) the prosecutor breached the plea agreement, and (3) the trial court erred by refusing to return two cell phones seized as evidence. Stovall also filed two personal restraint petitions (PRP), arguing that (1) he received ineffective assistance of counsel, (2) the sentencing court erred by failing to hold a hearing on his motion to discharge his counsel, and (3) he is entitled to

withdraw his plea based on numerous instances of misconduct.[1] Because his challenges lack merit, we reject each of Stovall's arguments, affirm his sentence, and dismiss his PRPs.

## FACTS

On October 31, 2008, Stovall was arrested following a narcotics investigation conducted by officers of the Lakewood Police Department. The State charged Stovall with one count of unlawful possession of a controlled substance with intent to deliver and one count of unlawful delivery of a controlled substance. On February 5, 2009, the State filed an amended information charging Stovall with one count of unlawful delivery of a controlled substance and one count of unlawful possession of a controlled substance with intent to deliver. The State also alleged that count one was committed in a public transit stop shelter, RCW 69.50.435(1)(h), and both counts were committed while Stovall was on community custody, RCW 9.94A.525(19).

On May 12, Stovall agreed to enter an *Alford*[2] plea to both charges. The defendant's statement on plea of guilty included the following recommendation from the State:

> 84 months on counts I and II concurrent; 9-12 mo. community custody; $500 [Crime Victim Penalty Assessment]; $100 [deoxyribonucleic acid (DNA)]; DNA sample; $200 costs; $400 [Department of Assigned Counsel] recoupment; Defense can argue [Drug Offender Sentencing Alternative (DOSA)] sentence; forfeit seized property.

---

[1] Specifically, Stovall argues that the prosecutor, the police, the informant, the trial judge, and the court reporter committed misconduct. Stovall's claims of misconduct against the police and the informant regard the criminal investigation and are irrelevant to challenges to Stovall's guilty plea. And on May 23, 2011, we issued an order to provide Stovall with copies of the clerk's papers filed in this case, and all volumes of the verbatim reports of proceedings comply with the requirements of RAP 9.2(e)(1)(F). Accordingly, we do not address Stovall's claim against the police, the informant, or the court reporter any further.

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Clerk's Papers (CP) at 10. Stovall signed the statement on plea of guilty. After a colloquy, the trial court accepted Stovall's guilty plea. The trial court continued the sentencing hearing to allow Stovall to gather information regarding the availability of a DOSA option and entered an order for presentence screening for DOSA.[3]

On August 7, 2009, the trial court continued sentencing to allow Stovall additional time to obtain presentence screening for DOSA. At the sentencing hearing on September 18, 2009, the State informed the court that, originally, it did not believe that Stovall qualified for a DOSA. But based on the State's research and preparation, the State agreed that a DOSA sentence would

---

[3] We note that there are two types of DOSA sentences: residential and prison-based. RCW 9.94A.660(3). To determine which type of DOSA is appropriate, the trial court may order either, or both, a risk assessment report and a chemical dependency screening report. RCW 9.94A.660(4). From the record it does not appear that the residential DOSA sentence was being considered for Stovall. RCW 9.94A.662, which defines the prison-based DOSA sentence, provides,

(1) A sentence for a prison-based special drug offender sentencing alternative shall include:

(a) A period of total confinement in a state facility for one-half the midpoint of the standard sentence range or twelve months, whichever is greater;

(b) One-half the midpoint of the standard sentence range as a term of community custody, which must include appropriate substance abuse treatment in a program that has been approved by the division of alcohol and substance abuse of the department of social and health services;

(c) Crime-related prohibitions, including a condition not to use illegal controlled substances;

(d) A requirement to submit to urinalysis or other testing to monitor that status; and

(e) A term of community custody pursuant to RCW 9.94A.701 to be imposed upon the failure to complete or administrative termination from the special drug offender sentencing alternative program.

(2) During incarceration in the state facility, offenders sentenced under this section shall undergo a comprehensive substance abuse assessment and receive, within available resources, treatment services appropriate for the offender. The treatment services shall be designed by the division of alcohol and substance abuse of the department of social and health services, in cooperation with the department of corrections.

3

be appropriate. Stovall's defense counsel addressed the court regarding the availability of DOSA

and explained that when offenders are sentenced to more than 36 months confinement, they are

screened in prison, enter inpatient drug treatment during their confinement, and receive

outpatient drug treatment while on community custody. He also explained that local offices and

the Department of Corrections (DOC) will only do presentence DOSA screening when the

offender qualifies for a residential DOSA which is a sentence less than 36 months confinement.

The trial court stated,

> I don't like doing things with the uncertainty. I can go along with what the State
> is saying and what [Stovall's counsel is] saying, . . . for him, at 50 years old, and
> get him some help. But, I want to know that it's real, that it's funded, and that it
> is pursuant to the law and the pleadings that are necessary to accomplish it, and
> that there are resources to accomplish it.

Report of Proceedings (RP) (Sept. 18, 2009) at 20. The trial court continued the sentencing

hearing for another 60 days.

The trial court held another sentencing hearing on December 18, 2009. Stovall's attorney

explained that DOC had stopped doing prescreened prison-based DOSAs, but they had recently

begun providing prescreening again. Stovall's attorney provided the trial court with a copy of

the prescreening report finding that Stovall suffered from chemical dependency. Stovall's

attorney admitted that he was unable to obtain specific dollar amounts used for DOSA programs,

but he presented findings from DOC's monthly reports:

> In November of this year they disclosed that they added 115 new beds and that
> their intention is to consistently increase the beds for DOSA. And it shows that
> they have them in a Chehalis facility and the Airway Heights facility, and also in
> the McNeil Island facility. And they're increasing the bed numbers, and they've
> filled those bed numbers. In November, I think they had 47 people recommended
> from judges for the DOSA. Of those, they let 43 in. So, essentially what happens
> is, if you order a DOSA, then they become eligible for the DOSA in the prison
> system. They will then do another evaluation of that offender to determine
> whether or not they want that offender in their program. In November, four of the

4

> 47, the DOC didn't want them in their program. If that's what happens, then they serve the midpoint of their sentence range. If they do accept them in, they stay in prison population until a bed comes open.

RP (Dec. 18, 2009) at 8-9. During the hearing, the trial court and the State repeatedly confirmed the State's recommendation as expressed in the statement on plea of guilty. The trial court had to continue the sentencing hearing again because Stovall decided to challenge his criminal history and offender score; therefore, the State needed additional time to obtain certified copies of Stovall's previous judgment and sentences.

Stovall was sentenced on December 31, 2009. At sentencing, the State recommended 84 months confinement and argued against a DOSA sentence. After the State made its recommendation, the following exchange took place:

> [DEFENSE COUNSEL]: I just don't think I can do or say anything. [Stovall] has a memorandum in support of motion and declaration, attorney/client conflict of interest, exigent circumstance, mandating the immediate discharge of counsel. He's filed Bar complaints against me. He's filed Bar complaints against [the prosecutor]. They've been dismissed. He has filed appeals on the dismissal.
>
> You know, the second-to-the-last time we were here, I asked him if he wanted me to proceed. He said proceed, you know. And that's subsequent to this being filed with the clerk of the court. I don't think any bench copies ever made it to you. And I don't know if [the prosecutor] has it, or not. But, you know, I argued for his DOSA, I'd guess, on probably four or five occasions. . . .
>
> In addition, you asked to see if there was still a viable program. They've added 115 beds just in November. It's a viable program. It exists. It is preferred under the law. . . .
>
> . . . .
>
> [COURT]: In the recommendation, though, you agree that the State's recommendation, through the deputy prosecutor, is 84 instead of 144; and to argue against the [DOSA] is within the discretion of the agreement and the prosecutor.
>
> [DEFENSE COUNSEL]: I do. I do agree that -- I guess what I'm saying here, just for the record, is that there was an evolution which began with this offer that the State made and is sticking to and has come back to. . . .
>
> . . . .
>
> But, at the same time, if [Stovall's] motion is properly before this Court, your failure to consider his motion and rule on his motion is, in and of itself, a reversible error. That is an abuse of discretion to not consider a motion that's

5

properly before the Court. So, if you don't consider his motion to fire me -- and, quite frankly, if we don't fire me, there's just going to be more problems and more problems and more problems. And so, in all candor toward the tribunal, that's what I'm trying to say.

[COURT]: I don't have any motion before the Court.

[STATE]: There is no motion before the Court. It is not properly before the Court.

[COURT]: Nothing is properly before the Court except sentencing.

RP (Dec. 31, 2009) at 9-13. Stovall's defense counsel concluded by making a final argument for the imposition of a DOSA sentence. After defense counsel was finished, the trial court allowed Stovall to make an extensive argument which included many of the reasons why he believed his defense counsel had been deficient and his problems with the underlying, substantive facts of the case. After listening to the attorneys and Stovall, the trial court stated,

> All right. Now, before I impose the sentence and make a decision regarding the [DOSA], I feel that it's incumbent upon the Court to make an observation. I think that both the State's attorney and your defense attorney have acted with professionalism and with integrity in handling this case, and to the extreme. [Defense counsel] has represented you to persuade this Court to impose a DOSA sentence. I see no violation of his practice in defending you. And, with regard and with response to the State and their representation in this matter, they have also acted with integrity and been professional. And, it appears to me, having reviewed the Statement of Defendant on Plea of Guilty, that they are following the recommendation that is in that document.
>
> So, with that, I'm going to impose a sentence. I've thought about this. I've thought about your history and your background, and *I'm convinced that the just and fair sentence in this matter is not DOSA*, so I'm going to follow the recommendation of the State. I could give you anywhere. You remember, the Court doesn't have to follow anybody's recommendation.

RP (Dec. 31, 2009) at 19-20 (emphasis added). The trial court imposed 84 months of total confinement, 12 months of community custody, legal financial obligations, and forfeiture of contraband that is evidence.

After the trial court imposed sentence, Stovall alleged that "[t]here is an issue of property," specifically cell phones that were seized at Stovall's arrest. RP (Dec. 31, 2009) at 22.

6

The court stated his sentencing order provided that all contraband would be forfeited and all other property would be returned. The State informed the trial court that it was its position that the cell phones were contraband, and Stovall disagreed. The trial court agreed that it was probably not something that could be returned to Stovall.

Stovall filed a pro se direct appeal. He also filed two separate, pro se PRPs. We consolidated his direct appeal and both of his PRPs for review.

ANALYSIS

INEFFECTIVE ASSISTANCE OF COUNSEL

Generally, we apply different standards of review depending on whether an issue is raised on direct appeal or in a PRP. However, recently our Supreme Court stated that if a defendant meets the *Strickland*[4] standard for ineffective assistance of counsel, he has necessarily made a showing of prejudice sufficient to grant a PRP. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012) ("We hold that if a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice."). Therefore, we address all of Stovall's ineffective assistance of counsel claims collectively, regardless of whether he raised them in his direct appeal or his PRPs.

To prevail on an ineffective assistance of counsel claim, Stovall must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it fell below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Our scrutiny of counsel's performance is highly deferential; we

---

[4] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

7

strongly presume reasonableness. *State v. McFarland*, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995). To establish prejudice, a defendant must show a reasonable probability that the outcome would have differed absent the deficient performance. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). If an ineffective assistance of counsel claim does not support a finding of either deficiency or prejudice, it fails. *Strickland*, 466 U.S. at 697.

Stovall argues that his attorneys' performances were deficient preparing for trial, before he entered his guilty plea. He also alleges numerous instances of ineffective assistance during sentencing. Because Stovall fails to meet his burden under *Strickland*, his ineffective assistance of counsel claims fail.

First, Strickland alleges that he received ineffective assistance of counsel from both of his attorneys prior to entering his guilty plea.[5] He argues that his attorneys failed to properly interview and subpoena witnesses. Because Stovall entered a guilty plea, we review the reasonableness of counsel's conduct under the standard for effective assistance of counsel in a plea bargaining context. "In a plea bargaining context, 'effective assistance of counsel' merely requires that counsel 'actually and substantially [assist] his client in deciding whether to plead guilty.'" *State v. Osborne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984) (alteration in original) (quoting *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901, *review denied*, 96 Wn.2d 1023 (1981)). Defense counsel must inform the defendant of all direct consequences of the guilty plea. *State v. A.N.J.*, 168 Wn.2d 91, 113-14, 225 P.3d 956 (2010). The trial court's extensive colloquy with Stovall prior to accepting Stovall's guilty plea demonstrates that Stovall was fully

---

[5] Stovall had one attorney appointed at the beginning of his case, but after expressing dissatisfaction with her performance, Stovall successfully moved to proceed pro se. Stovall's second defense counsel was originally appointed as standby counsel. Later, Stovall agreed to allow standby counsel to represent him.

informed of the consequences of the guilty plea, the rights he was giving up by pleading guilty, and the potential consequences of being convicted at trial. In addition, both Stovall and trial counsel stated that they had discussed the guilty plea. Therefore, defense counsel's performance was not deficient and Stovall's ineffective assistance of counsel claim fails.[6] *Strickland*, 466 U.S. at 697.

Second, Stovall claims that defense counsel's performance was deficient during sentencing because he failed to obtain a timely DOSA screening and obtain information regarding the funding of DOSA programs. We disagree. The record shows that defense counsel obtained all information regarding the availability and resources for DOSA except for specific dollar amounts. Moreover, the trial court did not refuse to impose a DOSA sentence because of either the DOSA screening or the information on DOSA funding. Rather, the trial court decided not to impose a DOSA after considering Stovall's history and background. Therefore, Stovall was not prejudiced by defense counsel's performance, and his claim fails. Because failure to establish prejudice necessarily defeats Stovall's claim, we do not address further whether defense counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

Third, Stovall alleges that defense counsel's performance was deficient because defense counsel failed to argue that the State was violating the plea agreement by arguing against a DOSA sentence at Stovall's final sentencing hearing. As we explain below, the State did not violate its obligations under the plea agreement. Any objection or argument the defense counsel

---

[6] Even if we considered defense counsel's performance under the standard for trial counsel, "there is no absolute requirement that defense counsel interview witnesses before trial." *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 488, 965 P.2d 593 (1998). Therefore, defense counsel's failure to interview witnesses does not fall below an objective standard of reasonableness and does not support a claim of ineffective assistance of counsel.

may have made lacked legal basis and would have been futile. Therefore, defense counsel's performance was neither deficient nor prejudicial. *Strickland*, 466 U.S. at 697.

Fourth, Stovall argues that his counsel was deficient for failing to file a motion for the return of his cell phones. CrR 2.3(e) governs motions for the return of property no longer needed as evidence. *State v. Alaway*, 64 Wn. App. 796, 798, 828 P.2d 591, *review denied*, 119 Wn.2d 1016 (1992). A CrR 2.3(e) motion may be filed at any time, including after trial. *State v. Card*, 48 Wn. App. 781, 786, 741 P.2d 65 (1987). Stovall may file a CrR 2.3(e) motion for the return of his cell phones at any time, therefore he was not prejudiced by defense counsel's failure to file the motion at or before sentencing. Accordingly, this ineffective assistance of counsel claim also fails. *Strickland*, 466 U.S. at 697.

Fifth, Stovall argues that he received ineffective assistance of counsel because his defense counsel omitted elements of the plea agreement on the written statement of defendant on plea of guilty including (1) the State would not argue against a DOSA sentence, and (2) the State was required to return his two cell phones. However, the record belies Stovall's assertion. The court reviewed all the conditions of the plea agreement included in the written document and Stovall confirmed that they were correct. Stovall has not met his burden to show that defense counsel's performance was deficient, and his ineffective assistance of counsel claim fails. *Strickland*, 466 U.S. at 697.

Stovall has failed to meet the burden necessary to prevail on all his ineffective assistance of counsel claims. Accordingly, both his direct appeal and his PRP ineffective assistance claims must fail.

10

BREACH OF PLEA AGREEMENT

Stovall argues that the State breached the plea agreement by arguing against imposing a DOSA sentence. However, the plain language of the plea agreement establishes that the State retained the discretion to argue either for or against the DOSA sentence. Accordingly, the State did not breach the terms of the plea agreement.[7]

A plea agreement is a contract between the defendant and the State, under which the defendant pleads guilty for some State concession such as a sentencing recommendation. *State v. Barber*, 170 Wn.2d 854, 859, 248 P.3d 494 (2011). Due process requires the State to follow a plea agreement's terms. *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997) (citing *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971)). The State breaches the plea agreement when it either fails to make the agreed recommendation or undercuts the terms of the plea agreement. *State v. Van Buren*, 101 Wn. App. 206, 213, 2 P.3d 991, *review denied*, 142 Wn.2d 1015 (2000).

Here, the express terms of the plea agreement required the State to recommend 84 months confinement (the low end of Stovall's standard sentencing range) and to allow Stovall to argue for a DOSA sentence. Nothing in the agreed upon recommendation prevented the State from being able to argue against Stovall's request for a DOSA sentence. At sentencing, the State recommended 84 months confinement, as required by the plea agreement. Stovall's attorney was given the opportunity to argue extensively for a DOSA sentence. Therefore, the State complied

---

[7] In his PRP, Stovall also makes a claim of prosecutorial misconduct based on the State's alleged breach of the plea agreement. Because the State did not breach the plea agreement, we do not address Stovall's PRP claim separately.

with the express terms of the recommendation in the plea agreement and Stovall's claim that the State breached the plea agreement lacks merit.

RETURN OF CELL PHONES IN EVIDENCE

Stovall further claims that the State "violated Stovall's due process rights" because it did not return two cell phones seized from Stovall. Br. of Appellant at 32 (capitalization omitted). In response, the State argues that this issue is not ripe for review. We agree with the State.

To determine whether a claim is ripe, a court must examine the fitness of the issues for judicial determination and the hardship to the parties that withholding determination would cause. *State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010). On review, issues are fit for judicial determination when three requirements are met: (1) the issues raised are primarily legal, (2) the issues raised do not require further factual development, and (3) the challenged action is final. *Sanchez Valencia*, 169 Wn.2d at 786 (quoting *State v. Bahl*, 164 Wn.2d 739, 751, 193 P.3d 678 (2008)).

The issues raised in Stovall's appeal are not ripe for judicial determination. Although the judgment and sentence requires Stovall to "forfeit any property in evidence," CP at 27, Stovall bases his claim to the return of the cell phones on CrR 2.3(e). But he did not file a CrR 2.3(e) motion until after this appeal was pending. The record on appeal does not disclose whether the trial court has ruled on Stovall's CrR 2.3(e) motion. Thus, Stovall has not challenged a final action; in addition, the issues he raises require further factual development.[8] Because these issues are not fit for judicial determination, we hold that Stovall's claim is not ripe for review. *Valencia*, 169 Wn.2d at 786.

---

[8] Upon Stovall's oral request, the parties briefly disputed whether the two cell phones were contraband; the sentencing court refused Stovall's request without resolving this dispute.

12

PERSONAL RESTRAINT PETITIONS

Stovall raises several issues in his consolidated PRPs. We address three of them in detail below: (1) whether the trial court erred by failing to discharge his second attorney, (2) whether the trial court erred by disregarding two of his pro se motions, and (3) whether the trial court committed misconduct by removing his bar complaints against the attorneys from the court file. Stovall cannot meet the high burden required for us to grant relief in a PRP. Accordingly, we dismiss his PRPs.

"'Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment.'" *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013) (quoting *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132-33, 267 P.3d 324 (2011)). To meet the high standard for granting collateral relief, the petitioner must show "either that he or she was actually and substantially prejudiced by constitutional error or that his or her trial suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Finstad*, 177 Wn.2d at 506 (citing *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007)). Even assuming that Stovall's allegations establish that the trial court committed error, he cannot satisfy the standard for granting relief in a PRP.

First, Stovall argues that the trial court erred by refusing to discharge his second counsel. The record clearly demonstrates that Stovall's counsel repeatedly advocated for the trial court to impose a DOSA sentence and made a significant effort to gather the information on DOSA the trial court requested. Considering defense counsel continued to advocate for a DOSA, Stovall cannot show that he was substantially prejudiced or that there was a complete miscarriage of justice. Furthermore, Stovall was represented by counsel at the time he filed his pro se motions

to the court. Because defendants do not have the right to "hybrid representation," defendants cannot file pro se motions while they are represented by counsel unless the trial court specifically allows the hybrid representation. *State v. Hightower*, 36 Wn. App. 536, 541, 676 P.2d 1016, *review denied*, 101 Wn.2d 1013 (1984). Accordingly, Stovall's pro se motions were not properly before the trial court.

Second, Stovall argues that the trial court erred by "totally disregard[ing]" numerous pro se motions that he filed on December 1, 2009, and October 13, 2010. CP (Jan. 4, 2011) at 9. However, Stovall has not presented any argument establishing why or how he was prejudiced by the trial court's failure to hear his motions. *See Hightower*, 36 Wn. App. at 541. As explained above, Stovall's attorney repeatedly advocated for a DOSA, the State complied with its sentencing recommendation, and the trial court gave him several opportunities to address the court with his own arguments. Accordingly, Stovall has failed to demonstrate that the trial court's failure to consider his motions caused substantial prejudice or a complete miscarriage of justice.

Third, Stovall argues that the trial court committed misconduct by removing copies of the bar complaints he filed from the court file. Stovall has presented no argument, and we fail to see, how he could have been prejudiced by the removal of copies of the bar complaints from the court's file or how the removal of the bar complaints constitutes a complete miscarriage of justice. Therefore, Stovall has failed to meet the high standard required for us to grant relief from a PRP.

Stovall has presented several issues for our review on both direct appeal and in his consolidated PRPs. His numerous ineffective assistance of counsel claims fail and the State did not breach its obligations under the plea agreement. His claim regarding seized property is not

14

ripe for review. And he fails to meet the high burden required for us to grant relief under a PRP. Accordingly, we affirm Stovall's conviction and sentence and dismiss his PRPs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, P.J.

We concur:

PENOYAR, J.

BJORGEN, J.