[No. 21442.  Department Two.  May 23, 1929.]

WILLIAM O. THOMSON et al., *Appellants*, v. VIRGINIA
MASON HOSPITAL et al., *Respondents*.[1]

*George F. Hannan,* for appellants.

: *J. Speed Smith* and *Henry Elliott, Jr.,* for respondents.

[1]Reported in 277 Pac. 691.

FULLERTON, J.—This is an action for malpractice. The appellants, Thomson, are husband and wife. The respondent Virginia Mason Hospital is a corporation, and is engaged in the business of conducting a hospital. The respondents D. H. Houston and A. H. Gray are physicians and surgeons, and engage in the same line of general practice; they are associates, rather than partners, and work under an agreement to the effect that, when one of them is called to attend upon a patient, and is unable at the time to answer the call, the other will attend the patient for the time being. In 1924, Mrs. Thomson became pregnant, and employed Dr. Houston to attend her professionally during the period of her pregnancy and during the time of her confinement. As the time for her confinement approached, he advised her to the effect that when she felt the pains of parturition coming upon her to have herself taken to the hospital named, and notify him, when he would attend upon her.

Mrs. Thomson was taken to the hospital on the morning of January 20, 1925. Dr. Houston was not within call at that time, and Dr. Gray attended her. In the course of the parturition, which occurred some two hours after Mrs. Thomson reached the hospital, Dr. Gray directed to be administered to her a hypodermic injection of ergot. A nurse in attendance obeyed the direction, administering the ergot in the deltoid muscle of the right arm of the patient. Some few days later, the arm began to swell and discolor at the place where the ergot was administered, and Mrs. Thomson began to complain of pain. Dr. Houston seems to have been in charge of the case at that time, and he directed local applications to be applied. These afforded no relief, and on January 28, Dr. Gray lanced the arm, obtaining therefrom what the hospital records

described as a purulent discharge, with some blood. The language of the record seems to have been that of the hospital nurse, who was in attendance at the time, rather than that of Dr. Gray. He testified that he did not make the record, and further testified that, while there was a quantity of pus and some blood discharged from the arm at the time it was lanced, the pus was not of the infectious type. The operation afforded only temporary relief. The trouble recurred, and relief was sought by similar operations and various treatments without permanent results, until finally a cure was effected by a somewhat radical surgical operation performed by another surgeon.

During the time taken to effect a cure, the arm was so far disabled as to prevent Mrs. Thomson from performing her household duties, necessitating the hiring of help for that purpose; large sums also were expended in effecting a cure; there was much suffering, and the arm is permanently disfigured. It is to recover in damages for these matters that the action is brought. At the trial, when the evidence was concluded, the court directed a verdict in favor of the respondents, and entered a judgment in accordance therewith. It is from this judgment that the appeal is prosecuted.

The negligence charged in the complaint, while set forth therein with some detail and at some length, can be reduced to the following specific heads: (1) that the injection of the ergot into the body of Mrs. Thomson was injected at an improper place, in that it was injected "just above and adjacent to the bone known as the humerus bone," where the flesh is not sufficiently thick to prevent the hypodermic needle from penetrating the bone:

(2) That the ergot was suffered to be administered by an unskillful and inexperienced nurse;

(3) That

". . . the hypodermic needle by which the ergot was administered was not sterile, and the plaintiff's arm was not in a sterile condition at the time of administering the same;"

(4) That the physician in charge was negligent in that he made no inspection of the hypodermic needle prior to its use, and gave no directions as to the place where the hypodermic should be injected, and no instructions as to the manner and method of its administration, and was negligent in that he permitted the ergot to be administered by a nurse; and

(5) "That all of the defendants were negligent in this: that, after the said hypodermic injection was given, they did not give proper care to said arm; that, although plaintiff complained of pain, they did not give her proper treatment, and they permitted her to be discharged from the hospital as cured, when in fact the said arm was not cured; plaintiffs further allege that all of said defendants were negligent in that the humerus bone was struck and pierced by said hypodermic needle, when in the exercise of ordinary care it should not have been."

The question discussed in the arguments of counsel and the question presented by the appeal is, of course, whether there was substantial evidence from which the jury could have found that any of the charges of negligence was established. But, before passing to a discussion of the evidence, it may be well again to call attention to our rule with reference to the character of evidence necessary to establish the affirmative of an issue. We have long since held that a scintilla of evidence, as these terms are commonly defined, is not sufficient for that purpose; that, on a question of fact, before the trier of the fact is warranted in finding the fact established, there must be substantial evidence in its support. This does not

mean that the fact sought to be established must be supported by direct evidence, or mean that it may not be established by the proof of facts from which the fact sought to be established is necessarily or reasonably inferred, but it does mean that a disputed question of fact, by whatever character of evidence it is sought to be proven, must have in its support that character of evidence which would convince an unprejudiced thinking mind of the truth of the fact, before it can be said to be established.

Turning to the first of the charges of negligence, it was the testimony of all of the expert witnesses that ergot is an irritant drug; that it cannot be injected into any part of the human body, subcutaneously, without danger of its forming an abscess; that, if abscesses are to be avoided, it must be injected somewhat deeply into the flesh, and, because of this, a fleshy part of the body must be chosen for the purpose, and that a usual and proper place is a deltoid muscle. It was testified also that the proper method of administering the drug is to grasp and raise the muscles into which it is to be injected with one hand, and with the other push the hypodermic needle perpendicularly into it. The ergot in this instance was, as we have heretofore noted, injected into a deltoid muscle. It is the appellants' contention, however, that it was injected at a place too low down on the muscle where the fleshy part was not of sufficient thickness to prevent the needle from coming into contact with, and penetrating, the bone. But we think this conclusion is drawn rather from the after-effects than from knowledge of the place or of the manner of its administration.

The place of the insertion of the needle could not be determined with exactness at the time of the trial, and possibly not after the arm was first lanced. Mrs.

Thomson, herself, while on the witness stand, indicated the place at which she observed the wound left by the needle, but the evidence is not sufficiently clear to enable us to locate the place to which she referred. There is evidently not a wide margin of difference, when administered in the deltoid muscle, between a proper and an improper place, and seemingly the trial judge, who observed the place she indicated, would not have taken the case from the jury had he been of the belief that the place indicated was an improper one, or that there was any substantial doubt as to the fact. There was no evidence on either side as to the method employed in administering the drug. But negligence in this respect would not be presumed. If there is a presumption either way, it would be that the method employed was the usual and proper method. Nor do the unfortunate results which followed give rise to an inference of negligence. The testimony of all of the medical witnesses was that the administration of ergot, no matter how skillfully it may be administered, "sometimes," as stated by the appellants' medical witness, and "frequently," as stated by those of the respondents, causes an abscess. That serious results followed, is not, therefore, evidence from which it can be inferred that the administration was not at the proper place.

The second of the charges of negligence we find no evidence at all to support, other than the inference that can be drawn from the fact that the ergot was possibly administered by a senior undergraduate nurse. But we cannot conceive that this fact alone can give rise to an inference of negligence. Possibly, had it been left to the nurse to determine whether or not the drug should be administered to the patient, it could be urged with some reason that the respondents were negligent in so doing, but the act of administering the drug is mechanical, a part of the routine work of the

nurse, and it was shown that these nurses had been carefully and fully instructed in the mechanics of the act.

■ With reference to the first branch of the third of the charges of negligence, we have noted the evidence of infection afforded by the hospital chart. In addition thereto, a medical witness called by the appellants testified that he saw the arm shortly prior to the time it was first lanced, and that it then had the appearance of being infected. He testified later on, however, that abscesses were sometimes caused by the injection of ergot where no infection is present, and that the arm would have presented much the same appearance in either case. Another part of the appellants' testimony is also significant in this connection. The appellants called the surgeon who performed the final operation. He testified somewhat minutely as to the condition of the arm at the time he operated upon it and as to the operation he performed, yet he does not testify that the arm was then infected or that it bore the appearance of having theretofore been infected. He, it would seem, of all of the medical experts, would have precise knowledge as to the condition of the arm in this respect. No questions were asked him, it is true, concerning the matters, but the fact that he was not questioned concerning them carries with it a very strong inference that his answers would have been unfavorable to the appellants. The testimony of Dr. Gray and Dr. Houston was to the effect that no infection was present, and the testimony of other medical witnesses who answered to hypothetical questions, was to the effect that the symptoms did not necessarily indicate infection. This latter testimony, we realize, is beside the question; that the question is, was there sufficient evidence of infection to take the case to the jury. But, viewing it in this light, we cannot conclude that the

evidence was of that substantial character which is required to substantiate the affirmative of the issue.

There was no evidence at all on the second branch of the charge. The nurse in charge testified to the usual practice in such cases, but she had no remembrance whether the practice was followed in this instance or not.

It is true, as set forth in the fourth of the charges, that the physician did not inspect the particular hypodermic needle prior to its use on the patient, and true that he gave no directions as to the place where the hypodermic should be administered, and no instructions as to the manner and method of its administration, and true that he permitted it to be administered by a nurse. But it by no means follows that these omissions must be negligence in and under all circumstances. Whether or not they can be said to be so, must depend on the conditions and circumstances. Had the delivery taken place in a private home, as is sometimes the case, where no antecedent preparations have been made for such acts, then unquestionably a physician would be negligent in suffering a hypodermic to be administered without proper precautions taken either at the time, or at some prior time in anticipation of the necessity of its administration. But the delivery here took place at a well-appointed and well-equipped hospital, where emergencies are anticipated and prepared for in advance, and where properly sterilized instruments are prepared and kept for emergency uses, and where the physician is surrounded by trained assistants. The physician in this instance knew of these conditions, and we think it too much to say that he was negligent in relying upon them.

As to the last of the charges, the appellants press only the charge that the humerus bone of the

appellant's arm was struck and pierced by the hypo-
dermic needle. But here again we find nothing to sup-
port the charge. There was no direct evidence that
the hypodermic needle penetrated to the bone, and
much that indicates that such a thing would be im-
possible. If there is evidence at all, it is the inference
that arises from the unfortunate result. But in this
instance the evidence, as we read it, shows without con-
tradiction that the result following the administration
of the drug was likely to occur had there been no neg-
ligence in its administration. In such instances, the
showing of the result does not prove the fact. But,
perhaps, it is meant that the needle penetrated to the
bone, or to the periosteum which surrounds the bone,
and that the ergot was deposited by the needle on the
one or the other. There is evidence in the record,
coming principally from the respondents' witnesses,
that such an administration of the drug would be a
negligence. But in searching the record to discover
how far the evidence may justify the fact, we find noth-
ing to support it other than, as we have said before,
the inference that may be inferred from the unfortun-
ate result.

The printed arguments of counsel have been pre-
pared with care, and we have not noticed much of de-
tail thought to have a bearing on the different ques-
tions discussed. But we think we need not pursue the
inquiry farther. In our opinion, there is no such sub-
stantial evidence of negligence on the part of the
respondents as will justify a verdict in the appellants'
favor.

The judgment of the trial court is therefore affirmed.

MAIN, FRENCH, and PARKER, JJ., concur.