THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM BARTON
MELROSE, *Appellant.*

*William G. Jenkins,* for appellant (appointed counsel for appeal).

*Charles O. Carroll, Prosecuting Attorney,* and *John R. Cuningham, Deputy,* for respondent.

HOROWITZ, A. C. J.—Defendant Melrose was convicted of the crime of grand larceny in violation of RCW

9.54.010 (5).[1] The property alleged to have been stolen consisted of a camera with an attached light meter, all of which was alleged to be of value in excess of $75. Defendant appeals, raising two basic questions; namely, (1) the claimed error of the trial court in refusing to suppress certain evidence, and (2) the sufficiency of evidence of value to prove the crime charged. The facts presented are as follows.

On July 1, 1969, two Seattle Police Department detectives were interrogating a pawnbroker operating a pawnshop in Seattle concerning certain items sold to him within the preceding 24 hours in order to determine if any of the items were stolen property. The pawn broker told them that on two different occasions a person had sold items to him, giving different names and different addresses on each occasion. While discussing these transactions, the person who had sold the items entered the store. That person was the defendant. The pawnbroker informed the detectives that the person was entering. As the defendant approached the pawnbroker, the two detectives then stood aside and overheard the entire conversation which ensued between the pawnbroker and the defendant. The defendant was carrying an Exakta 35 mm. camera and light meter. He offered to sell the items to the pawnbroker for $10. The latter agreed. Defendant then informed the pawnbroker that his name was Roger Rodrigues and that his address was 2031 Lane Street. The address so given differed from the address he had last given to the pawnbroker. The detectives then stepped forward, identified themselves and requested some identification from the defendant. The de-

---

[1]"Every person who, with intent to deprive or defraud the owner thereof—
". . .
"(5) Every person who, knowing the same to have been so appropriated, shall bring into this state, or buy, sell, receive or aid in concealing or withholding any property wrongfully appropriated, whether within or outside of this state, in such manner as to constitute larceny under the provisions of this chapter—
"Steals such property and shall be guilty of larceny."

fendant produced identification showing his name to be William Barton Melrose. He was asked if that was his true name and he replied in the affirmative. At this point they placed the defendant under arrest for using a false name and false address. At that time he was advised of his constitutional rights. He stated he understood his rights and further stated that the camera was not stolen. The officers then and there interrogated the defendant concerning the camera, light meter and ownership. He stated that the camera belonged to his wife who had bought it in Japan some 7 years before. He failed to show a familiarity with the camera or to recognize the light meter as such. Following this, the officers took possession of the articles sought to be sold and took the defendant to the station house. After further investigation, he was charged with the crime of grand larceny.

Immediately prior to the trial on the merits, the defendant, through his counsel, moved to suppress evidence next described on the ground that the arrest was unlawful. The evidence sought to be suppressed consists of the items taken from the defendant at the time of the arrest; evidence later obtained identifying the camera taken from the defendant in the pawnshop as belonging to its owner, a Mr. Ham; and testimony by Mr. Ham concerning a telephone conversation with the defendant in which the latter admitted or confessed to having taken the property here involved. At the time of the motion to suppress, there was no showing as to just how the police officers discovered Mr. Ham's connection with the defendant or with the articles involved. The motion also sought to suppress in a somewhat qualified way "any testimony as to any admissions or confessions alleged to have been made by the defendant at the time of his arrest . . ." or any admission by the defendant to Mr. Ham that may have been overheard by a police officer. The trial court denied the motion.

The initial question presented is the lawfulness of the arrest. Seattle Code § 10.56.050 (1969) provides:

Anyone who pledges, sells or consigns any property to or with a pawn shop or pawnbroker shall sign the records required to be kept by such dealer with his true name and shall include his correct residence address.

The violation of this section is a misdemeanor. Seattle Code § 10.02.230 (1969). The evidence is undisputed that the defendant did not sign nor did the police officers see the defendant sign the record of the sale kept by the pawnbroker. The officers merely heard the defendant give the pawnbroker a name and residence address which upon their interrogation and information prior to arrest appeared false. The ordinance does not make it a criminal offense for the person selling the property to the pawn broker to orally give a false name or false address. Had the arresting officers waited, the defendant might well have committed the crime described in the ordinance. The most that can be claimed is that the defendant attempted to commit the misdemeanor without actually committing it. *State v. Charley*, 48 Wn.2d 126, 291 P.2d 673 (1955); *State v. Swane*, 21 Wn.2d 772, 153 P.2d 311 (1944).

■ It is well settled that a police officer may not make a warrantless arrest for a misdemeanor including one made such by a city ordinance, and whether constituting a breach of the peace or not, unless the misdemeanor is committed in the presence of the arresting officer. *State v. Greene*, 75 Wn.2d 519, 451 P.2d 926 (1969); *Tacoma v. Harris*, 73 Wn.2d 123, 436 P.2d 770 (1968); *State v. Wilson*, 70 Wn.2d 638, 424 P.2d 650 (1967).

We need not consider whether the defendant's conduct, which does not involve a breach of the peace, if sufficient to constitute an attempt to commit the misdemeanor for which he was arrested, would itself have been a crime committed in the presence of the officer. The Seattle ordinance does not make or purport to make an attempt to violate Seattle Code § 10.56.050 (1969) a crime. RCW 9.01.070 dealing with attempts to commit crimes under state law has not been incorporated in the Seattle criminal code. RCW 35.21.180; RCW 35.22.280; *cf., St. Paul v. Webb,*

256 Minn. 210, 97 N.W.2d 638, 76 A.L.R.2d 1423 (1959). Nor can it be properly contended, as urged by the state, that the arrest was lawful on the theory that the police officers had reasonable cause to believe that the misdemeanor was committed in their presence, even though they were mistaken. The police officers saw and heard the entire transaction and were charged with knowing from the evidence observed by them that the defendant's conduct did not constitute a violation of the city ordinance involved. A warrantless arrest based on probable cause of guilt (*Tacoma v. Harris, supra; Sennett v. Zimmerman,* 50 Wn.2d 649, 314 P.2d 414 (1957)) means probable cause of guilt of conduct which violates the law for which the arrest is made. It does not mean probable cause of guilt of conduct which does not constitute the violation of such law. In the former case, it may be said that the officer is privileged to make the arrest, even though he acts under excusable mistake of fact. See *Tacoma v. Harris, supra; White v. Jansen,* 81 Wash. 435, 142 P. 1140 (1914). In the latter case he acts under an inexcusable mistake of law. Restatement (Second) of Torts, § 121 Comment (i) (1965). Here, the state failed to prove that the conduct in the officers' plain view constituted a crime. Accordingly, no misdemeanor was committed in the officers' presence. See *State v. Miles,* 29 Wn.2d 921, 190 P.2d 740 (1948); *State v. Silverman,* 48 Wn.2d 198, 292 P.2d 868 (1956).

■■ The mere fact of unlawful arrest does not necessarily vitiate the conviction. It is the admission of evidence obtained incident to or as a result of the arrest that can upset the conviction. *Wilkins v. State,* 237 Md. 617, 205 A.2d 593 (1964). The overall effect of our decisions is that in the absence of the arrested person's consent, articles taken from the person unlawfully arrested, and post arrest statements made in the course of the interrogation incident to such arrest and even reasonable search are not admissible against the defendant, either for the crime for which he has been arrested or for another crime charged because they are the fruits of such unlawful arrest and search.

*State v. Johnson*, 71 Wn.2d 239, 427 P.2d 705 (1967); *Tacoma v. Houston*, 27 Wn.2d 215, 177 P.2d 886 (1947); *McNear v. Rhay*, 65 Wn.2d 530, 398 P.2d 732 (1965); *cf., State v. O'Bremski*, 70 Wn.2d 425, 423 P.2d 530 (1967). See *State ex rel. Fong v. Superior Court*, 29 Wn.2d 601, 609, 188 P.2d 125 (1948). Even the testimony of a witness discovered pursuant to an unlawful interrogation is inadmissible. See *State v. O'Bremski, supra*, at 428. Accordingly, a motion to suppress such wrongfully obtained evidence seasonably made before trial will be granted; and if denied and if the error is one not harmless beyond a reasonable doubt, a denial constitutes reversible error. *State v. Duckett*, 73 Wn.2d 692, 440 P.2d 485 (1968); *State v. Johnson*, 71 Wn.2d 239, 427 P.2d 705 (1967). In the instant case involving illegal arrest, it cannot be fairly said that consent was knowingly and intelligently given by the defendant to disclose the matter sought to be suppressed. See Annot., 9 A.L.R.3d 858, 864 (1966); *cf., McNear v. Rhay, supra,* at 541. It is not clear whether the police officers discovered Mr. Ham's connection with the matter from the defendant in their possible later interrogation or whether the evidence involving Mr. Ham and his ownership of the articles involved came from an independent source. There is a possibility that the police obtained the leads leading to Mr. Ham's evidence from Mr. Richard Wilkinson whose camera was also taken at the time that Mr. Ham's camera was taken and who apparently complained to the police. Evidence obtained from an independent source does not come within the "fruit of the poisonous tree" doctrine and is admissible. *State v. O'Bremski, supra*. In any case the trial court should have granted the defendant's motion to suppress the items taken from the defendant at the time of arrest. It is true that the camera and light meter were not introduced in evidence. However, the articles were described by the arresting officers. At least some of the descriptive detail was obtained after the arrest. See *Tacoma v. Houston, supra*. Such testimony, in our opinion, sufficiently accomplishes the purpose of introducing the physi-

cal items themselves so that if the physical items are subject to a motion to suppress, so is the officers' substitutionary evidence describing them.[2]

Defendant assigns as error the court's refusal to grant his motion in arrest of judgment. He claims that, in any event, the evidence of value is insufficient to show that the camera and light meter involved had a market value in excess of $75 so as to justify a charge of grand larceny. RCW 9.54.090(6). He claims that "general speculation" is required to arrive at the required value.[3]

The evidence before the jury concerning the items taken showed them to consist of an Exakta 35 mm. camera containing a Zeiss type lens and capable of taking slides, together with a Weston light meter contained in a "leather type gadget bag attached to the strap carrying the camera." There was testimony that the view finder of the camera "was dirty . . . and there were specks of dirt and hair in the top of it . . . " and that the light meter did not work. Mr. Ham also testified that his father bought the camera in 1965, paying $320. "We traded two cameras and equivalent value in cash for this Exakta camera." He didn't know "what the camera might be worth today . . . However, I know the price of cameras drops rapidly." He did not know what the light meter was worth

---

[2] The detectives testified that after they had arrested defendant, "he was advised of his constitutional rights by myself . . . " and that " . . . he stated he understood his rights." Whether evidence in the form of a conclusion testified to is legally sufficient to show that Miranda warnings were given and that defendant "knowingly and intelligently" waived his rights so as to render post arrest statements inadmissible on this ground as well, is a question not raised here, and we do not determine it. See *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966) and *State v. Lister,* 2 Wn. App. 737, 469 P.2d 597 (1970); Annot., 9 A.L.R.3d 858 (1966). See also *State v. Erho,* 77 W.D.2d 559, 564, 463 P.2d 779 (1970).

[3] The trial court instructed the jury, defendant not excepting, that "Value" . . . means the price which such property will bring in the market. In determining the value or fair market price of the property in question, you may take into consideration the original cost of the property, its age and condition, and any competent testimony as to its market value at the time of the alleged offense.

but "It is something we have had for a long time." The testimony was received without objection. Although the value evidence concerning the camera and light meter charged to have been stolen is sparse in character, it is nevertheless substantial, *i.e.*, "that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." *Arnold v. Sanstol*, 43 Wn.2d 94, 98, 260 P.2d 327 (1953). Evidence of value in criminal cases is proved in the same way as in civil cases. *State v. Romero*, 95 N.J. Super. 482, 231 A.2d 830 (1967); 52A C.J.S. *Larceny* § 118 (1968). The price paid for an item of property, if not too remote in time, is proper evidence of value. Due allowance can be made by the jury for changes in the condition of the property which affect its market value. Admissible evidence of price paid is entitled to great weight. See *Epstein v. Denver*, 133 Colo. 104, 293 P.2d 308, 55 A.L.R.2d 783 (1956); Annot., 155 A.L.R. 262, 276 (1945). It is not essential that there be direct evidence of value—a fact in issue—because reasonable inferences from substantial evidence may suffice. *Thomson v. Virginia Mason Hosp.*, 152 Wash. 297, 300, 277 P. 691 (1929); *State v. Martin*, 73 Wn.2d 616, 625, 440 P.2d 429 (1968). Reasonable inferences from substantial evidence in a criminal case may be relied on to prove the crime. *State v. Uglem*, 68 Wn.2d 428, 413 P.2d 643 (1966); *State v. Palmer*, 1 Wn. App. 152, 459 P.2d 812 (1969).

When substantial evidence is present, the drawing of reasonable inferences therefrom and the doing of some conjecturing on the basis of such evidence is permissible and acceptable. *Lavender v. Kurn*, 327 U.S. 645, 90 L. Ed. 916, 66 S. Ct. 740 (1946). If, however, the necessity for conjecture results from the fact that the evidence is merely scintilla evidence, then the necessity for conjecture is fatal. Juries are often required to do some conjecturing from substantial evidence in cases presenting more complicated questions of fact than exist there; *e.g.*, issues of unliquidated damages in contract or tort actions or personal injury actions involving questions of life expectancy, permanent

disability, pain and suffering. Even eminent domain cases when substantial evidence is present may still involve reliance upon reasonable inferences and some conjecture in arriving at fair market value.

The state would have aided the jury if it had offered expert opinion testimony concerning the market value of the property in question. Even had such evidence been offered, however, its weight would still be for the jury. *Moyer v. Clark,* 75 Wn.2d 800, 454 P.2d 374 (1969); *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958); 31 Am. Jur. 2d *Expert and Opinion Evidence* § 183 (1967). If the jury rejected such expert testimony, it could determine market value from the evidence in the record, using the judgment of persons of ordinary experience and knowledge. See 5 Meisenholder, Wash. Prac. § 352 (1965). The evidence of market value, while sparse, was sufficiently substantial to survive the motion in arrest of judgment.

The judgment is reversed with directions to grant a new trial. If the state does not notify the defendant within 20 days from the date of filing of the remittitur in this case that the state elects to retry the defendant for the crime charged, the information shall be dismissed.

UTTER and WILLIAMS, JJ., concur.