FILED
COURT OF APPEALS
DIVISION II

2015 MAR 17 AM 8:42

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45721-1-II |
| Respondent, | |
| v. | |
| SCOTT DOUGLAS STARGEL, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury returned verdicts finding Scott Stargel guilty of second degree

theft and second degree vehicle prowling. Stargel appeals his convictions, asserting that (1) the

trial court erred by denying his motion to suppress evidence that the victim had identified him in

a photographic montage, which montage Stargel contends was impermissibly suggestive; and (2)

the State failed to present sufficient evidence of the value of stolen items in which to support his

second degree theft conviction. Because the photographic montage used to identify Stargel was

not impermissibly suggestive, and because the State presented sufficient evidence from which

the jury could have reasonably concluded that the items Stargel stole were valued in excess of

$750, we affirm Stargel's convictions.

## FACTS

On April 15, 2011, Dalton Hembroff drove to a Puyallup Subway restaurant to purchase lunch. When Hembroff parked and exited his truck, he made eye contact with a man who appeared suspicious to Hembroff. The man was standing in front of a blue car that was parked next to Hembroff's truck. Hembroff locked his truck and entered the restaurant. When Hembroff exited the restaurant a few minutes later, he saw that some items had been taken from his truck. Hembroff saw that the blue car previously parked next to him was "briskly" leaving the parking lot, and he decided to follow the car. Report of Proceedings (RP) (Nov. 6, 2013) at 30. Hembroff called 911 while continuing to follow the blue car; he stopped following the car after the 911 operator instructed him to do so.

Shortly thereafter, Hembroff met with Puyallup Police Officer Greg Reiber at the Subway parking lot and gave Reiber a description of the theft suspect. Hembroff described the suspect as a "dirty or scruffy" six foot tall white male with tanned skin who was approximately 30 years old, weighed 180 pounds, and had short brown hair. The following week, Hembroff obtained security video footage that showed the theft of items from his truck, and he gave the footage to the police.

On January 9, 2012, Puyallup Police Detective Michael Lusk contacted Hembroff to see if he could identify the theft suspect from a photographic montage. Lusk presented Hembroff with a photographic montage containing Stargel's photograph and the photographs of five other males. Hembroff identified Stargel as the theft suspect.

No. 45721-1-II

On February 28, 2013, the State charged Stargel with second degree theft and second degree vehicle prowling. Before trial, Stargel moved to suppress evidence that Hembroff had identified him in a photographic montage, which motion the trial court denied.

Hembroff, Reiber, and Lusk were the only witnesses at trial, and each testified consistently with the facts stated above. Additionally, Hembroff testified that the items stolen from his truck included a new umpire jacket valued at $100, two textbooks that cost $80 to $100 each, and a laptop computer, which computer Hembroff stated he had purchased for $900 less than a year before it was stolen. After the State rested its case, Stargel moved to dismiss his second degree theft charge, asserting that the State failed to prove with sufficient evidence that the combined value of the stolen items exceeded $750. The trial court denied Stargel's motion to dismiss. The jury returned verdicts finding Stargel guilty of second degree theft and second degree vehicle prowling. Before sentencing, Stargel filed a CrR 7.4 motion for arrest of judgment, again asserting that the State failed to present sufficient evidence that the items he stole were valued in excess of $750, which motion the trial court denied. Stargel appeals his convictions.

ANALYSIS

I. SUPPRESSION OF IDENTIFICATION EVIDENCE

Stargel first contends that the trial court erred by failing to suppress evidence that the victim had identified him in a photographic montage. We disagree.

We review a trial court's decision to admit evidence of a victim's out-of-court identification of the defendant for an abuse of discretion. *State v. Kinard*, 109 Wn. App. 428,

3

No. 45721-1-II

432, 36 P.3d 573 (2001). We apply a two-part test to determine whether a trial court abused its discretion by admitting evidence that the defendant was identified in a photographic montage. First, the defendant bears the burden of demonstrating that the identification procedure was impermissibly suggestive. *State v. Linares*, 98 Wn. App. 397, 401, 989 P.2d 591 (1999) (citing *State v. Vaughn*, 101 Wn.2d 604, 682 P.2d 878 (1984)). An out-of-court photographic identification procedure is impermissibly suggestive if the procedure directs undue attention to a particular photograph. *Kinard*, 109 Wn. App. at 432-33. "Minor differences in the photos" are insufficient to demonstrate that the identification procedure was impermissibly suggestive. *State v. Eacret*, 94 Wn. App. 282, 285, 971 P.2d 109 (1999). Second, if the defendant demonstrates that the identification procedure was impermissibly suggestive, we must then determine whether such suggestiveness created a substantial likelihood of irreparable misidentification considering the totality of the circumstances. *Linares*, 98 Wn. App. at 401. In making this determination, we consider:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.

*Linares*, 98 Wn. App. at 401. If Stargel fails to show that the photographic identification procedure used here was impermissibly suggestive, our inquiry ends, and we need not analyze the second part of the test. *Eacret*, 94 Wn. App. at 285 (citing *Vaughn*, 101 Wn.2d at 610-11).

Here, the photographic montage at issue pictured six white males with similar features. Each of the men pictured in the photographic montage appeared to be approximately 30 years of age with short to medium brown or black hair. Stargel and all but one of the other men pictured

4

had short facial hair. Additionally, each of the men were pictured in a booking photograph with a similar gray background; three of the men were wearing what appears to be an orange jail uniform and the remaining three, including Stargel, were wearing what appears to be a gray jail uniform. Stargel asserts that his photograph differed from the remaining photographs in three ways: (1) his photograph appears to have been shot from closer up such that his head occupies a larger portion of the photograph than the other men; (2) his photograph has a lighter background; and (3), he is the only man pictured with a visible tattoo on his neck. We hold that these minor differences are insufficient to demonstrate that the photographic montage identification procedure used here was impermissibly suggestive. *Eacret*, 94 Wn. App. at 285. In reaching this holding, we are guided by prior cases addressing this issue.

For example, in *State v. Weddel*, 29 Wn. App. 461, 474-75, 629 P.2d 912 (1981), we held that a photographic montage was not impermissibly suggestive where (1) the subjects were photographed against different backgrounds, with only the defendant photographed against an off-white background with an electrical panel showing; and (2) the defendant's photograph was a quarter-inch wider than the other subjects' photographs. Although we stated that the difference in the background of the defendant's photograph was "troubling," and that the photographic montage was "not completely free of possible suggestiveness," we nonetheless held that the montage was not "so impermissibly suggestive as to deny defendant due process of law." 29 Wn. App. at 475-76. In so holding, we reasoned that the identifying witness's identification of the defendant was not influenced by the slight differences in the photographs. 29 Wn. App. at 475.

Similarly, in *State v. Hanson*, 46 Wn. App. 656, 666-67, 731 P.2d 1140 (1987), Division One of this court held that a photographic montage was not impermissibly suggestive where (1) the defendant was one of only two subjects photographed with Polaroid film, and (2) "the subjects var[ied] in age and appearance more than is desirable." In holding that the photographic montage identification procedure was not impermissibly suggestive, the *Hanson* court reasoned that the variations in the photographs "did not suggest that [the defendant] was a more likely suspect than the others displayed." 46 Wn. App. at 666-67. The *Hanson* court also relied on the identifying witness's testimony "that no one drew her attention to any of the photos and that she felt free not to pick any of the subjects displayed in the montage." 46 Wn. App. at 667.

Finally, in *State v. Vickers*, 148 Wn.2d 91, 118, 59 P.3d 58 (2002), our Supreme Court held that a photographic montage was not impermissibly suggestive where (1) the defendant was depicted in a Department of Licensing photograph whereas the remaining five subjects were depicted in booking photographs, (2) the background of the defendant's photograph was lighter than the other photographs, and (3) the defendant was the only subject in the montage who was not wearing coveralls. Our Supreme Court concluded that the differences between the defendant's photograph and the remaining subjects' photographs was too slight to be impermissibly suggestive, reasoning that each of the photographs appeared to be the same size and that each subject was a male of approximately the same age with dark scalp and facial hair. *Vickers*, 148 Wn.2d at 119.

Here, the differences between Stargel's photograph and the remaining subjects' photographs is less pronounced than those differences identified and determined to be permissible in *Weddel*, *Hanson*, and *Vickers*. Although Stargel's photograph contained a background that was lighter than the remaining subjects' photographs, each of the photographs had the same gray background color, and the difference in the background lightness of Stargel's photograph when compared to two of the other subjects' photographs is so minor as to be nearly indiscernible. The difference in Stargel's head size when compared to the other photographs is also slight and did not suggest that he "was a more likely suspect than the others displayed." *Hanson*, 46 Wn. App. at 667. Finally, the fact that Stargel's photograph was the only one in which the subject had a neck tattoo did not render the photographic montage impermissibly suggestive because Hembroff testified that he did not see whether the theft suspect had a neck tattoo when he first saw him, and because Hembroff testified that the presence of the neck tattoo in Stargel's photograph did not play a role in his identifying Stargel as the theft suspect. Because the photographic montage used here to identify Stargel was not impermissibly suggestive, the trial court did not abuse its discretion by admitting the out-of-court identification evidence at trial.

## II. SUFFICIENCY OF THE EVIDENCE

Next, Stargel contends that the State failed to present sufficient evidence that the items he stole exceeded $750 in value, an essential element of second degree theft. Again we disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime

beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To convict Stargel of second degree theft as charged here, the State had to prove beyond a reasonable doubt that he (1) wrongfully obtained or exerted control over the property of another (2) exceeding $750 in value but not more than $5,000 in value (3) with intent to deprive the person of his or her property. RCW 9A.56.020(1)(a); former RCW 9A.56.040(1)(a) (2009). Stargel challenges only the sufficiency of evidence in support of the second element—that the value of the stolen property exceeded $750 in value.

Former RCW 9A.56.010(18)(a) (2006) defined "[v]alue" as "the market value of the property or services at the time and in the approximate area of the criminal act." "Market value" is the price that a well-informed buyer would pay to a well-informed seller. *State v. Kleist*, 126 Wn.2d 432, 435, 895 P.2d 398 (1995). It is well established in this state that an owner of property may testify to the property's value "'whether he [or she] is generally familiar with such values or not.'" *State v. Hammond*, 6 Wn. App. 459, 461, 493 P.2d 1249 (1972) (quoting 3 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 716, at 56 (James H. Chadbourn rev. ed. 1970)). Additionally, evidence of the retail price of the stolen property, alone, may be sufficient to establish the value of the property. *State v. Ehrhardt*, 167 Wn. App. 934, 944, 276 P.3d 332 (2012). And, "[t]he price paid for an item of property, if not too remote in time, is

proper evidence of value." *State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970). The State need not present direct evidence of the value of stolen property, rather, "the jury may draw reasonable inferences from the evidence, including changes in the condition of the property that affect its value." *Ehrhardt*, 167 Wn. App. at 944. The jury may also rely on its "ordinary experience and knowledge" when determining the market value of stolen property from the evidence presented. *Melrose*, 2 Wn. App. at 832.

Here, Hembroff testified about the value of items stolen from his truck, stating that his new umpire jacket was valued at $100, two text books were $80 to $100 each, and that he had purchased his laptop computer for $900 less than one year before it was stolen. Stargel contends that Hembroff's testimony was insufficient to support the value element of second degree theft because the testimony did not establish the market value of the laptop computer and textbooks[1] at the time he stole them. Stargel does not contest that the State presented sufficient evidence from which the jury could find that the market value of the umpire jacket was $100.

---

[1] As the following exchange shows, it is unclear whether Hembroff had testified as to the textbooks' purchase price or to their market value:

> [State]: What was the value of the umpire jacket?
> [Hembroff]: $100.
> [State]: How about the textbooks? Do you know about how much it was?
> [Hembroff]: Probably, give or take, $80 to $100 a piece.
> [State]: How many were there?
> [Hembroff]: I believe two.
> [State]: So somewhere between $160 to $200 worth of books?
> [Hembroff]: Correct.

RP (Nov. 6, 2013) at 25-26. Although unclear, for the sake of argument we treat Hembroff's testimony as establishing the textbooks' purchase price.

Accordingly, to uphold his second degree theft conviction, the State must have presented sufficient evidence that the combined market value of the stolen text books and laptop computer at the time of the theft exceeded $650.

Citing to *Ehrhardt*, 167 Wn. App. 934, Stargel asserts that we must reverse his conviction for lack of sufficient evidence, because the State failed to present evidence of "what the condition or depreciation of these items might be" and, thus, "[t]here was no evidence from which the jury could infer their current value." Br. of Appellant at 15. In *Ehrhardt*, a nonowner witness testified about the purchase price of stolen professional construction tools that had been used in professional construction projects for about three years prior to the theft. 167 Wn. App. at 938, 946-47. In reversing the appellant's second degree theft conviction for lack of sufficient evidence in support of the value element, we reasoned that the State failed to present any evidence from which the jury could infer "whether the tools even worked, let alone what effect their condition had on their market value." *Ehrhardt*, 167 Wn. App. at 947.

Here, in contrast with *Ehrhardt*, Hembroff testified that at the time of the theft, he was a college student and was then using the textbooks and his laptop computer in preparation for his upcoming final exams. He also testified that he purchased his laptop computer for $900 less than a year before it was stolen, and that he stored his class notes on that computer. Based on this testimony, the jury could reasonably infer that the textbooks were less than a semester old and were still being utilized in a college course at the time of the theft. Hembroff's testimony also permitted the jury to reasonably infer that the laptop computer was in working condition at the time of the theft. Unlike in *Ehrhardt*, here the State presented sufficient evidence of the

10

condition of the stolen items from which the jury could rely on its "ordinary experience and knowledge" to find that the combined value of the textbooks and laptop computer exceeded $650 in value when accounting for depreciation. *Melrose*, 2 Wn. App. at 832. Accordingly, we affirm Stargel's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Sutton, J.