# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48612-1-II |
| Respondent, | |
| v. | |
| PAVEL FEDOROVICH ZALOZH, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Pavel Fedorovich Zalozh appeals his convictions for residential burglary, theft of a firearm, and two counts of possession of stolen property in the second degree. Because sufficient evidence supports each conviction and because we do not consider Zalozh's argument regarding the admission of evidence, we affirm.

FACTS

I.     THE CRIMES

In the mid-to-late morning of June 2, 2012, Emma Kagrananova attended a garage sale at Mariam Chuklanov's house. Chuklanov and Kagrananova observed two young men walk past Chuklanov's house towards the cul-de-sac of the street. Shortly thereafter, they observed the men walk by again in the other direction and on the other side of the street. The men carried backpacks and walked at a fast pace. Both Chuklanov and Kagrananova recognized one of the men as Zalozh, because they knew his family through church. Both women knew that Zalozh did not live in the neighborhood.

That same day, in the mid-morning, John Clyde Mowery, Chuklanov's neighbor, left his house with his wife and child. As they backed out of their driveway, he observed two young men he did not know, standing on the corner of the street "staring" at them. 1 Report of Proceedings (RP) at 111. Mowery described the neighborhood as quiet, and it was "very rare you would see anyone [standing on the street]" who was not a neighbor. 1 RP at 112.

When the Mowery family returned approximately ninety minutes later, he noticed an open back door. An intruder "ransacked" the house. 1 RP at 113. Missing items owned by the Mowerys included a black backpack, two firearms and the locked safes in which the firearms were stored.

Mowery's neighbor recorded footage of two men walking towards the Mowery residence at 10:39 A.M., and running away from the house at 11:03 A.M. They carried backpacks that appeared to be full.

On June 9, a burglary occurred at Scott and Kyong Cha Powell's[1] home. Missing items included a wedding ring, a pearl necklace, pearl earrings, cubic zirconia earrings, a gold-plated chain necklace with a black onyx stone, a Seiko watch, and a gold pig charm. Scott estimated the property had a total value of approximately $830.

On June 10, a burglary occurred at Liviu and Silvia Lucaci's[2] home. The items they discovered missing included 50 to 80 one dollar coins, an Alaska mint coin, a pendant, a laptop, PlayStation games, a ring, and wedding rings. Liviu paid $60 for the Alaska mint coin. Silvia valued the missing items had a total value of $1,200. She based her opinion on what they paid for the items, but she did not know the market value in 2012.

---

[1] Because they share the same last name, and for clarity, we refer to the Powells by their first names. We intend no disrespect.

[2] Because they share the same last name, and for clarity, we refer to the Lucacis by their first names. We intend no disrespect.

On June 11, Deputy Richard Butler and Deputy Robin Yakhour located Zalozh in the backseat of his girlfriend's car. The deputies found Zalozh with two black backpacks and a blue plastic bag with items in it. They also discovered some jewelry hidden under a floor mat within Zalozh's reach. They determined that some of the items had been reported stolen and belonged to the Mowerys, Lucacis, and Powells. The black backpack belonged to Mowery.

After Butler arrested Zalozh, Zalozh waived his *Miranda*[3] rights. Zalozh denied knowing anything about any of the burglaries. When asked about the stolen property, Zalozh admitted that he sells the property for other people. He denied possessing the missing guns.

The State charged Zalozh with residential burglary of the Mowery residence (count I); two counts of theft of a firearm from the Mowery residence (counts II and III); two counts of possession of stolen property in the second degree from the Powells and Lucacis (counts IV and V); bail jumping on a class B or C felony (count VI);[4] and theft in the first degree (count VII).[5]

II.    TRIAL

In addition to the facts presented above, Deputy Erik Dunham testified that he responded to the Powell residence for a reported burglary. Dunham observed handprints in dirt on a window and concluded that someone had applied pressure to the window and pushed up on it; if the window had been unlocked, it would have moved. The State then asked whether Dunham could obtain fingerprint evidence. He stated he could not. Zalozh objected:

> [ZALOZH]: Your Honor, I'm going to object on relevance grounds. It's not something that's charged in this case. It's only a matter of whether property was stolen.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 468, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] This charge is not at issue in this case.

[5] RCW 9A.52.025; RCW 9A.56.300; RCW 9A.56.140(1); RCW 9A.56.160(1)(a); RCW 9A.76.170(1), (3)(c); and RCW 9A.56.030.

> THE COURT: Overruled. Relevance? Relevance is the objection?
> [ZALOZH]: That's correct.
> THE COURT: Overruled.

2 RP at 199-200.

The jury found Zalozh guilty on all counts. Zalozh appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Zalozh argues insufficient evidence supports his convictions for residential burglary, theft of a firearm, and possession of stolen property in the second degree. We disagree.

#### A. STANDARD OF REVIEW

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determines whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). Circumstantial evidence is equally as reliable as direct evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). In addition, we "must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." *Homan*, 181 Wn.2d at 106.

4

B.     RESIDENTIAL BURGLARY

To convict Zalozh of a residential burglary, the State had to prove beyond a reasonable doubt that "with intent to commit a crime against a person or property therein, the person enter[ed] or remain[ed] unlawfully in a dwelling other than a vehicle." RCW 9A.52.025(1).

The State argued at trial both that Zalozh acted as an accomplice or a principle in the burglary. The trial court instructed the jury on accomplice liability. A person is an accomplice of another if, with knowledge that it will promote or facilitate the commission of the crime, he solicits, commands, encourages, or requests another to commit the crime. RCW 9A.08.020(3)(a). The liability of an accomplice is the same as that of the principal. RCW 9A.08.020. "In Washington, an accomplice need not be aware of the exact elements of the crime. As long as the defendant engaged in conduct that is 'the crime,' the defendant may be found guilty." *State v. Berube*, 150 Wn.2d 498, 508-09, 79 P.3d 1144 (2003) (quoting *State v. Roberts*, 142 Wn.2d 471, 512-13, 14 P.3d 713 (2000)).

A jury need not be unanimous as to whether a defendant acted as a principal or an accomplice as long as the alleged crime occurred and that the defendant participated in it. *State v. Teal*, 152 Wn.2d 333, 339, 96 P.3d 974 (2004).

Accordingly, sufficient evidence supports Zalozh's conviction if the evidence at trial proved that he acted as an accomplice or a principal in committing the residential burglary. "[E]vidence is sufficient to show burglary where the defendant possessed recently stolen property and there is slight corroborative evidence of inculpatory circumstances, such as the defendant's presence near the scene of the crime." *State v. Ehrhardt*, 167 Wn. App. 934, 943, 276 P.3d 332 (2012).

Here, when Mowery left his house, he observed two men standing on the corner of the street. Video footage showed two men walk in the direction of the Mowery residence at 10:39 A.M., and run away from the direction of the house at 11:03 A.M. As the men ran away, they carried backpacks that appeared to be full. Both Chuklanov and Kagrananova recognized one of the men in the area at the time of the burglary as Zalozh, because they knew his family through church. Although Zalozh denied committing the burglary, he admitted to selling the stolen property for other people. In addition, the police found Zalozh with items from the Mowery residence that had been reported stolen.

From this evidence, the jury could reasonably infer that Zalozh either acted as a principal or an accomplice, and committed the residential burglary of Mowery's house because he possessed stolen items from the house and evidence supported his presence near the scene of the crime. Therefore, we conclude sufficient evidence supports Zalozh's conviction for residential burglary.

C.      THEFT OF FIREARMS[6]

To convict Zalozh of theft of a firearm, the State had to prove beyond a reasonable doubt that he committed theft of any firearm. RCW 9A.56.300(1). To prove theft, the State had to prove that Zalozh "wrongfully obtain[ed] or exert[ed] unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property." RCW 9A.56.020(1)(a).

The same legal principles of accomplice liability discussed previously also apply here. The trial court instructed the jury that to convict Zalozh of theft of a firearm, the State must prove beyond a reasonable doubt: "(1) That on or about June 2, 2012, the defendant wrongfully obtained

_____

[6] Although Zalozh references only one firearm in this section, the state charged him with two counts for the thefts of two firearms from the Mowery residence. The analysis is the same for both.

a firearm belonging to another; (2) That the defendant intended to deprive the other person of the firearm; and (3) That this act occurred in the State of Washington." CP at 126 (Instr. 20). Accordingly, sufficient evidence supports Zalozh's conviction if the evidence at trial proved that he acted as an accomplice or a principal in the theft of the firearm.

Here, during the burglary of the Mowery residence, two gun safes holding two firearms were taken. Because evidence supports Zalozh's residential burglary conviction and the firearms were taken during the burglary, a jury could reasonably infer that either Zalozh stole the firearms himself or aided in their theft. Therefore, sufficient evidence supports Zalozh's convictions for theft of a firearm.

D.    POSSESSION OF STOLEN PROPERTY IN THE SECOND DEGREE

Zalozh claims insufficient evidence supports his two convictions for possession of stolen property in the second degree because the State failed to present evidence of the stolen property's value in the geographical area from which he was alleged to have possessed it. We disagree.

To convict Zalozh of possession of stolen property in the second degree, the State had to prove beyond a reasonable doubt that Zalozh possessed stolen property "which exceeded seven hundred fifty dollars in value." RCW 9A.56.160(1)(a). The only element at issue is the value of the stolen property in the geographical area of Vancouver.

"Value" is defined as "the market value of the property or services at the time and in the approximate area of the criminal act." RCW 9A.56.010(21)(a). "'Market value is defined in this state as the price which a well-informed buyer would pay to a well-informed seller, where neither is obligated to enter into the transaction.'" *State v. Longshore*, 141 Wn.2d 414, 429, 5 P.3d 1256 (2000) (quoting *State v. Kleist*, 126 Wn.2d 432, 435, 895 P.2d 398 (1995)). A victim's testimony about "[t]he price paid for an item of property, if not too remote in time, is proper evidence of

7

value. Due allowance can be made by the jury for changes in the condition of the property which affect its market value." *State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970). However, the owner of the property may provide his or her opinion of the value of an item, not solely based on the price paid. *State v. Hammond*, 6 Wn. App. 459, 462-63, 493 P.2d 1249 (1972). "It is not essential that there be direct evidence of value—a fact in issue—because reasonable inferences from substantial evidence may suffice. Reasonable inferences from substantial evidence in a criminal case may be relied on to prove the crime." *Melrose*, 2 Wn. App. at 831 (internal case citation omitted).

Here, the Lucacis testified to the value of the property stolen from them. The missing items included 50 to 80 one dollar coins, an Alaska mint coin, a pendant, a laptop, PlayStation games, a ring, and wedding rings. Liviu paid $60 for the Alaska mint coin. Silvia valued the missing items as being worth a total of $1,200 because the items were 14 karat gold and the rings included diamonds and an amethyst. She based her opinion on what they paid for the items, but she did not know the market value in 2012. The jury could make a reasonable inference that the items were worth more than $750 even without specific testimony about the current market value at the time of the theft and in the place of the theft. The jury could also reasonably infer that Zalozh possessed all of the Lucacis's stolen property. Zalozh had stolen property in his possession and he confessed that he sold the stolen property for other people.

The Powells also testified to the value of the property stolen from them. The missing items included Kyong Cha's wedding ring, a pearl necklace, pearl earrings, cubic zirconia earrings, a gold plated chain necklace with a black onyx stone, a Seiko watch, and a gold pig charm. The wedding ring included a one carat diamond. Scott estimated that because the pig charm was solid gold, it was worth $360. Scott also estimated the value of the other items based on what they paid

8

to purchase them: $190 for the watch, $500 for the pearl necklace, $60 for the gold-plated necklace, $20 for the cubic zirconia earrings, and $60 for the pearl earrings. He estimated the total value for all of the items was about $830. Sufficient evidence existed that a jury could reasonably assess the value of the items. The jury could also reasonably infer that Zalozh possessed all of the Powell's stolen property. He had stolen property in his possession and Zalozh confessed that he sold the stolen property for other people.

Therefore, we conclude sufficient evidence supports each of Zalozh's convictions.

II.      404(b) EVIDENCE

Zalozh argues that the trial court erred by failing to analyze evidence under ER 404(b) after the State began to introduce evidence of other burglaries for which Zalozh was not charged.

A party generally waives the right to appeal an error absent an objection before the trial court. RAP 2.5(a). A purpose of the rule is to allow the trial court to correct any error called to its attention, thus avoiding needless appeals and retrials. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). ER 103(a)(1) requires "a timely objection . . . stating the specific ground of objection, if the specific ground was not apparent from the context."

Here, Zalozh clearly objected solely on relevance grounds, which is a different objection from the one he now raises. An objection based on relevance fails to preserve an appeal issue based on ER 404(b). *State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007).

Because Zalozh did not raise the arguments he argues on appeal before the trial court, the trial court did not have the opportunity to correct any error. Accordingly, he did not preserve this issue for appeal, and we do not consider the argument.

9

48612-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, P.J.

Sutton, J.

10